USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1781 UNITED STATES OF AMERICA, Appellee, v. HERMINIO PEREZ-PEREZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Selya and Boudin, Circuit Judges, ______________ and Saris,* District Judge. ______________ ____________________ Harry Anduze Montano for appellant. ____________________ Louis Peraertz, Department of Justice, with whom Deval L. _______________ __________ Patrick, Assistant Attorney General, Dennis J. Dimsey and Lisa J. _______ _________________ _______ Stark, Department of Justice, were on brief for the United States. _____ ____________________ December 26, 1995 ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. BOUDIN, Circuit Judge. Herminio Perez Perez was ______________ formerly a sergeant with the Puerto Rico Police Department. In 1989, he was charged under Puerto Rico law with attempted murder and concealing evidence. The charges stemmed from an incident in which Perez allegedly shot and wounded two riders on a motorcycle while seeking to bring it to a halt. Perez was tried in Puerto Rico Superior Court and acquitted by the jury on both counts. In 1992, Perez was indicted by a federal grand jury, in connection with the same shooting incident, and charged with deprivation of rights under color of law, in violation of 18 U.S.C. 242, and using a firearm during the commission of a crime of violence, in violation of 18 U.S.C. 924(c). In 1993, a jury convicted Perez on both charges, and he was sentenced to 106 months' imprisonment. He now appeals, raising a variety of different claims of error.  1. In the district court, Perez moved to dismiss the federal convictions on double jeopardy grounds. Although he conceded that successive state and federal prosecutions were permitted under the doctrine of "dual sovereignty," Perez maintained that Puerto Rico should not be considered a sovereign distinct from the federal government. The trial judge denied the motion, adhering to precedent in this circuit. United States v. Lopez Andino, 831 F.2d 1164, 1167- _____________ ____________ 68 (1st Cir. 1987).  -2- -2- Successive prosecutions even by the same sovereign do not violate the double jeopardy principles if the second prosecution involved substantively different offenses. Under the test of Blockburger v. United States, 284 U.S. 299, 304 ___________ _____________ (1932), readopted in United States v. Dixon, 113 S. Ct. 2849 _____________ _____ (1993), offenses are "different" for this purpose so long as "each [offense] requires proof of an additional fact which the other does not". Even were we here concerned with a single sovereign, Perez' claim would fail under Blockburger ___________ because the federal offenses and the Puerto Rico offenses do have different elements. The attempted murder charge under Puerto Rico law, unlike the federal civil rights offense, requires proof that a defendant acted with the intent to kill or with the foreseeable consequence of causing death. P.R. Laws Ann. tit. 33 3062, 4001 (1991); People v. Betancourt Asencio, ______ __________________ 110 P.R. Dec. 510 (1980). Conversely, the federal civil rights charge in this case required proof of elements not required by the attempted murder charge, including a showing that the defendant acted under color of law. 18 U.S.C.  242. The only two charges that even vaguely resembled each other are the two just discussed. The remaining charges-- concealment of evidence under local law and the firearms violation under federal law--are not even arguably the same -3- -3- charge as each other or as either the attempted murder or civil rights charge. In sum, Blockburger disposes of the ___________ double jeopardy claim, so the result would be the same even if Lopez Andino had never been decided.  ____________ 2. As a fall-back position, Perez argues that under the doctrine of collateral estoppel, the federal prosecution was barred because it required relitigation of factual issues resolved in Perez' favor during the Puerto Rico trial. Perez suggests that his acquittal on murder charges was equivalent to a finding that he had not used unreasonable force, unreasonable force being the premise of the federal civil rights charge. United States v. McQueeney, 674 F.2d 109, 113 _____________ _________ (1st Cir. 1982). Although the doctrine of collateral estoppel applies in criminal cases, Ashe v. Swenson, 397 U.S. 436, 443-44 (1970), ____ _______ the party to be precluded must have been the same as, or in privity with, the party who lost on that issue in the prior litigation. United States v. Bonilla Romero, 836 F.2d 39, _____________ ______________ 42-44 (1st Cir. 1987). Perez makes no effort to adduce facts showing privity in this case between federal and Puerto Rico prosecutors, possibly because he thinks that his "single sovereign" argument establishes an identity between the two governments, an argument this court has previously rejected in Bonilla Romero itself. Id. ______________ ___ -4- -4- But all this makes no difference to the outcome, for even assuming identity or privity among prosecutors, Perez has not shown that any fact previously determined in his favor in the local trial was relitigated in the federal case. A defendant can be acquitted of attempted murder even if he used excessive force. To be sure, Perez could have sought to show from the court records of the first trial that the excessive force issue, or some other issue critical in the federal trial, was actually tried and necessarily decided in his favor in the first case, but he has made no such showing here. United States v. Aquilar-Aranceta, 957 F.2d 18, 23 _____________ ________________ (1st Cir. 1992). 3. Perez says that the trial judge erred by instructing the jury, prior to closing argument by the government, to "give close attention" to the prosecutor. The trial judge made no similar remark before defense counsel's closing, and Perez asserts that this discrepancy improperly "carried the weight of the judge to one side of the balance." Perez did not raise this issue in the district court when the discrepancy could easily have been corrected, so we review only for plain error. United States v. Olivier-Diaz, 13 F.3d _____________ ____________ 1, 5 (1st Cir. 1993). The challenged remark was innocuous in isolation and could not have prejudiced the jury unless it were part of a pattern of remarks favoring the government. No such pattern is alleged or apparent from the record. Indeed, while -5- -5- discussing closing arguments generally, the judge admonished the jury to "give your close attention to the [prosecution and defense] attorneys while they address you." In the final charge, the judge told the jury that he had no opinion in the case and that anything suggesting otherwise should be disregarded. We see no error, let alone plain error, in the challenged remark.  4. Perez next asserts that the district court erred in not permitting the defense to offer the testimony of Sergeant Neftalie Hernandez Santiago to impeach the credibility of a government witness, officer Ricardo Nieves Lopez. During cross-examination, Nieves conceded that fellow police officers, including Hernandez, had accused him of various incidents of misconduct. Nieves maintained that these allegations were baseless and had been made only to retaliate for his testimony in Perez' previous trial. The defense called officer Hernandez to elicit testimony that Nieves had engaged in the alleged misconduct.  The district court in excluding the Hernandez testimony referred to Fed. R. Evid. 608(b), which precludes extrinsic evidence of bad acts (other than convictions) to support or attack the credibility of a witness. The notion underlying the rule is that while certain prior good or bad acts of a witness may constitute character evidence bearing on _________ veracity, they are not evidence of enough force to justify -6- -6- the detour of extrinsic proof. Thus, Rule 608(b) barred Hernandez' testimony insofar as it was offered to show that Nieves had a propensity to lie. Of course, Hernandez' testimony would not only have suggested that Nieves was of bad character but would also have contradicted Nieves' own denials on the witness stand. Impeachment by contradiction is a recognized mode of _____________ impeachment not governed by Rule 608(b), 28 C. Wright & V. Gold, Federal Practice and Procedure 6118, at 103 (1993), _______________________________ but by common-law principles. United States v. Innamorati, ______________ __________ 996 F.2d 456, 479-80 (1st Cir. 1993), cert. denied, 114 S. _____________ Ct. 409 (1993). But, again largely for reasons of efficiency, extrinsic evidence to impeach is only admissible for contradiction where the prior testimony being contradicted was itself material to the case at hand. Id. ___ Here, Nieves' alleged misconduct was not material to Perez' guilt or innocence. Finally, Perez' brief says that Hernandez would also have testified that Nieves' reputation for veracity was poor. __________ Reputation evidence of this kind is sometimes admissible, Fed. R. Evid. 608(a), although its weight is usually quite limited--precisely because specific examples of untruthfulness cannot be elicited in support. 3 J. Weinstein, M. Berger & J. McLaughlin, Weinstein's Evidence _____________________ para. 608[3], at 608-28 (1995). In all events, Perez did not -7- -7- advise the trial court of this facet of the proposed testimony, so the argument is effectively lost. See Fed. R. ___ Evid. 103(a)(2). 5. Finally, Perez claims that the trial court erred in declining to adjust his sentence downward two levels for acceptance of responsibility, pursuant to U.S.S.G. 3E1.1. Since this claim was not made in the district court, our review is limited to plain error. Olivier-Diaz, 13 F.3d at ____________ 5. In support of his claim, Perez offers only a statement in the presentence report indicating that he "expressed remorse for his wrongdoing and accepted responsibility for same," although the probation officer ultimately concluded that Perez was not entitled to a downward adjustment.  In all events, the record shows that Perez continued to deny responsibility for his crime at sentencing, stating that he lacked criminal intent at the time of the crimes and declaring his innocence. Thus, there is no indication that the trial judge committed an error, let alone plain error, in denying a downward adjustment. U.S.S.G. 3E1.1(a). Perez' further suggestion that the district court had to recite its reasons for denying the downward adjustment is mistaken; the reasons were and are apparent from the record. See United ___ ______ States v. Akitoye, 923 F.2d 221, 227 (1st Cir. 1991).  ______ _______ Affirmed. ________ -8- -8-