# United States Court of Appeals
## For the First Circuit

No. 16-2509

UNITED STATES OF AMERICA,

Appellant,

v.

DAVID SANTIAGO-COLÓN,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

John P. Taddei, Attorney, Appellate Section Criminal Division, U.S. Department of Justice, with whom Kenneth A. Blanco, Acting Assistant Attorney General, Trevor N. McFadden, Acting Principal Deputy Assistant Attorney General, Rosa E. Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Section, were on brief, for appellant.

Andrew S. McCutcheon, Assistant Federal Public Defender, with whom Franco L. Pérez-Redondo, Research & Writing Specialist, Eric Alexander Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for appellee.

February 28, 2019

**TORRUELLA**, **Circuit Judge**.  The United States appeals the district court's order granting David Santiago-Colón's ("Santiago") motion to suppress identification evidence, giving preclusive effect to a Puerto Rico Court of Appeals's order suppressing this same evidence in a local proceeding for different offenses.  According to the district court, inasmuch as Puerto Rico and the United States are a single sovereign for purposes of the Double Jeopardy Clause, Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863, 1869-77 (2016), it was bound by the local court's final judgment suppressing identification evidence, even though federal prosecutors "did not participate in the [Puerto Rico] court criminal proceedings against Santiago."  United States v. Santiago-Colón, 213 F. Supp. 3d 297, 298 (D.P.R. 2016).  In so ruling, the district court deviated from our on-point precedent holding that suppression of evidence by a Puerto Rico court does not require a federal court to suppress that same evidence unless federal prosecutors were a party, or were in privity with a party, to the suppression hearing in the Puerto Rico court, United States v. Bonilla Romero, 836 F.2d 39, 43-44 (1st Cir. 1987), which was not the case here.  Sánchez Valle, moreover, did not change the law in this area.  Accordingly, we reverse and vacate the district court's suppression order.

## I. Background

### A. Factual Background

On January 13, 2013, Puerto Rico Police Department Agent Carlos Sepúlveda-Rivera ("Sepúlveda") was off-duty at La Casita, a bar in Villalba, Puerto Rico, when he got into an altercation with two men. Sepúlveda and the two men exchanged gunfire. After the men shot Sepúlveda four times, he was transported to the hospital for treatment of his injuries. Sergeant Pedro Quiles-Torres ("Quiles") interviewed Sepúlveda at the hospital later that day. During his interview, Sepúlveda provided a description of his two assailants.[1] Based on the descriptions provided by Sepúlveda and a review of the security video footage of La Casita,

---

[1] According to the government, on the same evening the shootout occurred, Sepúlveda provided a description of the shooters' physical characteristics and attire. He described one of his assailants, later identified as Santiago, as slim, tall, wearing a jacket, a black sweater, and short blue pants. Sepúlveda also stated that, although he could not remember their names, he knew both assailants. Sepúlveda explained that he knew Santiago because he played basketball for the team of La Sierra, the neighborhood where Sepúlveda resides, and that he was called "Cabezón" (Spanish for "Big Head"). Sepúlveda also stated that Santiago was either the son-in-law or former son-in-law of the former mayor of Villalba. Indeed, Santiago's known nickname is "Cabezón," he played for La Sierra basketball team, and was related to the former mayor of Villalba. As to the second assailant, later identified as Richard Cartagena-Suárez, Sepúlveda provided a physical description, described his clothing at the time of the incident, and stated that he knew him because Sepúlveda had previously assisted in the individual's arrest for an unrelated offense.

local law enforcement agents identified Santiago and Richard Cartagena-Suárez ("Cartagena") as the shooters. The next day, Quiles showed two photo arrays to Sepúlveda, each of them containing nine photos. One array included Santiago's photo, and the other one included Cartagena's. Sepúlveda picked Santiago and Cartagena from the photo arrays.

**B. Local Case**

Puerto Rico prosecutors charged Santiago with attempted first-degree murder, carrying and using a firearm without a license, and discharging or pointing a firearm, in violation of Puerto Rico law. Santiago moved to suppress Sepúlveda's identification of him on the grounds that it was obtained in contravention of the Puerto Rico Rules of Criminal Procedure. The local prosecution opposed. The local trial court held a three-day evidentiary hearing, in which four witnesses (including Sepúlveda and Quiles) testified. After the local trial court denied suppression, Santiago appealed to the Puerto Rico Court of Appeals. The Puerto Rico Court of Appeals then reversed and suppressed the identification evidence. It noted some contradictions in Sepúlveda's testimony, concluded that Sepúlveda's identification of Santiago "and the photographic line up led by Sergeant Quiles were not trustworthy pursuant to the criteria established by . . . [the Puerto Rico] Supreme Court in

-4-

Pueblo v. Hernández González," 2009 WL 197570 (2009) (untranslated), and remanded the case to the local trial court. See App. at 65, 84, May 18, 2017, No. 16-2509 (certified translation of People v. Santiago-Colón, KLCE 2014-00130, 2014 WL 5438091 at *13, 20 (P.R. Ct. of App. Sept. 30, 2014)). The Puerto Rico Supreme Court declined to intervene, and the case was later dismissed.

## C. Federal Case

Based on the January 13, 2013 incident, a federal grand jury returned an indictment on June 4, 2015, charging Santiago with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[2] Santiago moved to suppress Sepúlveda's out-of-court identification and to prevent Sepúlveda from identifying him in court. He argued that the identification procedure had been unduly suggestive, that the Puerto Rico Court of Appeals had already considered and rejected the testimony of Sepúlveda and Quiles -- "the only witnesses who [could] provide material testimony on the issues relevant to the case at bar" -- and that said determination was final. Urging the court to apply a standard like the one used when reviewing habeas

---

[2] Santiago was indicted after the Puerto Rico Court of Appeals issued its opinion suppressing his identification, but before the local case was dismissed.

-5-

corpus petitions, Santiago argued that "disagreement alone is not enough" for a federal court to ignore a state court's credibility determination. Rather, "[t]he federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented." Because, according to Santiago, the Puerto Rico Court of Appeals's decision was not unreasonable, he urged the district court to "defer" to the "findings made by Puerto Rico's courts," suppress Sepúlveda's out-of-court identification of Santiago, and preclude Sepúlveda from identifying Santiago in court.

The government opposed the motion, arguing that Santiago had failed to show that "the identification procedure was impermissibly suggestive under federal law" and that, in fact, the procedure was reliable. The government also noted that the Puerto Rico Court of Appeals, in reversing the trial court, failed to give due deference to the trial judge's findings of fact and therefore misapplied Puerto Rico law. Additionally, the government pointed out that Sepúlveda knew the perpetrators before the shootout and identified Santiago by his nickname, supporting the reliability of the identification.

On October 4, 2016, without holding a hearing, the district court granted Santiago's "request to suppress identification." That order was followed by an opinion entered

-6-

the same day. Santiago-Colón, 213 F. Supp. 3d 297. In its opinion, the district court noted that in Sánchez Valle the U.S. Supreme Court held that "for purposes of the Double Jeopardy Clause, the [Puerto Rico] and United States governments constitute a single sovereign, in as much [sic] as the former's power to prosecute derives from the latter's." Id. at 297. The district court concluded that it "must give the [Puerto Rico] court suppression findings and judgment preclusive effect" because "[n]ot doing so would ignore the constitutional reality that indeed [Puerto Rico] and [the] United States are but one sovereign when it comes to criminally prosecuting individuals." Id. at 298. It further noted that, although federal prosecutors "did not participate in the [Puerto Rico] court criminal proceedings against [Santiago], their local counterparts in fact did" and "[t]heir authority to do so ultimately emanates from the United States." Id. (citing Sánchez Valle, 136 S. Ct. at 1863). The district court's order set a pre-trial conference for November 9, 2016 "to discuss if the Government ha[d] independent evidence to proceed with its prosecution, or if it will appeal the Court's suppression order."[3]

On November 10, 2016, the district court held the pre-trial conference. At the beginning of the conference, the

---

[3] That pre-trial conference was later rescheduled for November 10, 2016.

-7-

district court stated that it believed "there[] [was] a basis" for filing an interlocutory appeal. The government argued that the district court's suppression of Santiago's identification was contrary to binding First Circuit precedent applying collateral estoppel principles, including Bonilla Romero, 836 F.2d 39, and United States v. Pérez-Pérez, 72 F.3d 224 (1st Cir. 1995), and that Sánchez Valle did not change the law. The district court rejected the government's arguments and clarified that the court's decision was not based on collateral estoppel, but "on an assumption that it's the same sovereign." According to the district court, because under Sánchez Valle Puerto Rico and the United States are "a single sovereign," the Puerto Rico court's suppression findings and judgment have preclusive effect on a subsequent federal prosecution and bind the district court.[4]

The court then inquired whether the government had independent evidence to proceed to trial. The government responded that even though the court had suppressed Sepúlveda's out-of-court identification of Santiago, it "would like to proceed to trial" with the in-court identification, because Sepúlveda knew

---

[4] In the district court's words, although the local court's decision "may be a wrong ruling . . . it's still a ruling that's final," it "binds the [f]ederal [g]overnment," and precludes relitigation of the issue in federal court even if the district court "disagree[s] with [the ruling]."

Santiago prior to the January 13th incident and before he saw the photo array. The government also indicated that it could use the security video footage allegedly showing Santiago at the crime scene. Santiago responded that he thought the district court had suppressed both the out-of-court identification (product of the photo array) as well as any in-court identification because the Puerto Rico Court of Appeals had allegedly suppressed both identifications. After reviewing again the decision from the Puerto Rico Court of Appeals, the district court concluded that the Puerto Rico Court of Appeals had suppressed both Sepúlveda's out-of-court and in-court identifications of Santiago, and resolved to do the same. The court further stated that it would "supplement" its suppression order.

The district court noted that if the government had no independent evidence to identify Santiago at trial, the "course to proceed would be for the government to file a notice of appeal," because the issue was "definitely capable of repetition," would "continue happening," and was "appealable interlocutorily." Additionally, it noted that "[t]his may be the best case to do it." Santiago agreed that the government "should go up to the First Circuit to clarify th[e] issue."

Consistent with its statements during the pre-trial conference, later that day the district court entered an order

-9-

supplementing its October 4th order by clarifying that its suppression order was "based on the single sovereign doctrine and not on collateral estoppel" and "extend[ed] to both the in-court identification by . . . Sepúlveda . . . , as well as the photo identification." On December 2, 2016, the government filed its notice of appeal, stating that it was appealing from the order entered on November 10, 2016. On November 15, 2017, the government filed a certification under 18 U.S.C. § 3731 with the district court, in which the United States Attorney certified that "the appeal is not taken for the purpose of delay and that the evidence [suppressed] is a substantial proof of a fact material in the proceeding."

On appeal, the government claims the district court's order suppressing any in-court identification of Santiago as the shooter should be reversed because it is contrary to First Circuit precedent, which has held that whether suppression of evidence by a local court has preclusive effect in a federal proceeding is an issue of collateral estoppel, not double jeopardy. It further claims that, under collateral estoppel principles, the suppression of the identification evidence was improper because the two prosecuting authorities were not in privity.[5]

_____

[5] The government does not appeal the suppression of Sepúlveda's out-of-court identification of Santiago.

## II. **Discussion**

### A. Timeliness of the Notice of Appeal and 18 U.S.C. § 3731 Certification Requirement

Santiago claims that this court lacks jurisdiction to entertain this appeal because the government filed an untimely notice of appeal and failed to comply with the certification requirements under 18 U.S.C. § 3731. We address each procedural challenge in turn.

### i. Standard of Review and Applicable Law

This court must verify that it has appellate jurisdiction before addressing the merits of any appeal. Espinal-Domínguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003). "Jurisdiction is a question of law subject to de novo review." United States v. W.R. Grace, 526 F.3d 499, 505 (9th Cir. 2008).

The Criminal Appeals Act establishes in relevant part that:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . ., not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
>
> . . .
>
> The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

-11-

The provisions of this section shall be liberally construed to effectuate its purposes.

18 U.S.C. § 3731.

The government is allowed to take an interlocutory appeal from suppression and exclusion orders in certain circumstances to remedy the "imbalance created by the peculiarities of criminal procedure." United States v. Watson, 386 F.3d 304, 308 (1st Cir. 2004). While a criminal defendant who had unsuccessfully sought suppression of evidence before trial could appeal the denial of the suppression if he was convicted, double jeopardy principles preclude the government from appealing a pre-trial order suppressing evidence in the event of an unfavorable verdict at trial. Id. Because "Congress became concerned about both this disparity and the lack of uniform standards of admissibility that resulted from it," id., it amended the Criminal Appeals Act in 1968 to allow the government to appeal a pre-trial suppression or exclusion order, id. at 308-09. In 1970, Congress further amended the Criminal Appeals Act to remedy the courts' then-narrow interpretation of § 3731 and to include an explicit "command to construe the statute liberally," id. at 309, which this court has construed "as a cue to put substance ahead of form" in deciding whether it has jurisdiction to entertain an appeal, id. at 310; United States v. Kane, 646 F.2d 4, 7 (1st

-12-

Cir. 1981) (noting that "the liberal construction provision" dictates "a practical, rather than formalistic, application").

### ii. Timeliness Issue

Santiago argues that the government's notice of appeal was untimely because it was filed more than thirty days after the district court entered its October 4th order. According to Santiago, on October 4, 2016, the district court granted his motion to suppress, which sought to suppress not only Sepúlveda's out-of-court identification of him (the photo array), but also sought to prevent Sepúlveda from identifying him in court. Santiago argues that the government, however, failed to file a notice of appeal, or request clarification or reconsideration of the order, until after the thirty-day window provided in 18 U.S.C. § 3731 had expired.

Santiago acknowledges that "when the lower court changes matters of substance, or resolves a genuine ambiguity" in an otherwise appealable order, "the period within which an appeal must be taken . . . begin[s] to run anew," see Fed. Trade Comm'n v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211-12 (1952), but argues that such is not the case here. He contends that while the government attempts to draw a distinction between the October 4th and November 10th orders -- characterizing the former as suppressing only the out-of-court identification and the

-13-

latter as further suppressing any in-court identification by Sepúlveda -- such distinction is inappropriate because the order on November 10th did not materially change the October 4th order. The November 10th order, Santiago insists, merely reiterated that the prior suppression ruling included both the out-of-court and the in-court identifications, which does not serve to start the clock anew for appellate purposes.

In response, the government argues that the notice of appeal was timely because it was filed within thirty days of the November 10th order, which it characterizes as a "'supplement[al]' suppression order" that "materially amended the original October 4 orders by suppressing evidence that was not covered by the original orders."

The government states that neither the Puerto Rico Court of Appeals's opinion nor the district court's October 4th order "specifically addressed whether Agent Sepúlveda would be prohibited from identifying Santiago" at trial. According to the government, the "ambiguous" language of the Puerto Rico Court of Appeals's opinion and the district court's October 4th order, in conjunction with the district court's simultaneous scheduling of a pre-trial conference to discuss whether the government had independent evidence to proceed with its prosecution, as well as federal case law suggesting that suppression of an out-of-court

identification by a witness does not necessarily preclude an in-court identification by the same witness, led it to believe that only the photo array evidence had been suppressed. The government submits that the October 4th order was so ambiguous that the district court had to re-read the Puerto Rico Court of Appeals's opinion in order to determine whether its October 4th order also encompassed the in-court identification. The government further argues that if the October 4th order had been clear, as Santiago claims, "it would have been unnecessary for the district court to 'issue a supplement[al] order clarifying' its original ruling" and that the order itself stated that it was a "supplement" to the October 4th order, which "extend[ed]" suppression to in-court identification.

We are persuaded by the government's arguments. The October 4th order did not specify the scope of the suppression, and the Puerto Rico Court of Appeals's opinion, on which the district court relied, was ambiguous as to whether it also precluded Sepúlveda from identifying Santiago in court. In fact, the opinion of the Puerto Rico Court of Appeals gave the impression that only the photographic lineup identification had been suppressed.[6]

---

[6] The Puerto Rico Court of Appeals's opinion stated as follows:

[P]etitioners filed a Motion to Suppress Identification

-15-

In addition, as the government contends, suppression of a photographic lineup identification does not necessarily require exclusion of an in-court identification provided that the prosecution can "establish by clear and convincing evidence that the in-court identification[] w[as] based upon observations of the suspect other than the lineup identification." Moore v. Illinois, 434 U.S. 220, 225-26 (1977) (quoting United States v. Wade, 388 U.S. 218, 240 (1967)). Hence, this supports the government's understanding that only the out-of-court identification had been suppressed, and Sepúlveda could identify Santiago in court based on his knowledge of Santiago prior to the photo array.

Furthermore, as the government argues, the district court's scheduling of a pre-trial conference to discuss whether the government had additional evidence to proceed to trial, as well as the events that transpired during that pre-trial

. . . alleg[ing] that . . . they were identified through photographs the day after the facts . . . [and] . . . that the process was 'severely vitiated' [in] that it did not comply with the provisions of Rule 252.2 of [Puerto Rico] Criminal Procedure Rules. . . . [W]e conclude that the identification that Agent Sepúlveda Rivera made of . . . Santiago . . . and the photographic line up [sic] led by Sergeant Quiles were not trustworthy pursuant to the criteria established by our Supreme Court in Pueblo v. Hernández González. . . . [Thus, the trial court's] resolution is vacated and set aside and in its consequence, the suppression of the identification of petitioners is ordered.

App. at 41, 84, May 18, 2017, No. 16-2509.

conference, also support the government's interpretation that the October 4th order had not suppressed all of the identification evidence. At the November 10th conference, the parties disputed the scope of the October 4th suppression order. When the government stated that it believed the order had suppressed the out-of-court identification only, the district court did not clarify that it had also suppressed the in-court identification. Instead, the court decided to hear from defense counsel. In fact, even after defense counsel argued that the October 4th order "clear[ly]" suppressed both identifications, the court stated as follows:

> [I]f the government wants to proceed to trial, what I need then is for the government to file a motion and inform what witnesses are going to testify and if they're going to identify him in court or not so the defense can adequately respond. And then I can either -- either I'll grant it or deny it. And if I deny it and basically I'm suppressing everything, then the government can still appeal.

The district court then took a brief recess to review the opinion from the Puerto Rico Court of Appeals in order to ascertain the scope of its own suppression order. It was after reviewing again the opinion from the Puerto Rico Court of Appeals that the district court stated that it would suppress both identifications. It found that a "supplement[al] order clarifying" its original order was warranted. The court deemed it appropriate to clarify that its ruling was based "on the single

-17-

sovereign doctrine, not on collateral estoppel," and that its "suppression ruling <u>would include</u> the identification of Agent Sepúlveda of the defendant, as well as his . . . photo . . . identification."  It is worth noting that the court stated its suppression ruling "would include," and not that it "included" or "had included," the in-court identification.  Therefore, the court's chosen language supports the government's contention that the original order did not include the in-court identification. The court then proceeded to issue a supplemental order clarifying its October 4th order to these effects.  <u>See</u> Dkt. No. 70, <u>United States</u> v. <u>Santiago-Colón</u>, 15-cv-00396 ("supplement[ing] its ruling [of October 4th] . . . to the effect that that the same [was] based on the single sovereign doctrine and not on collateral estoppel" and "hold[ing] that its suppression extends to both the in-court identification by Agent Sepúlveda Rivera, as well as the photo identification").[7]

Considering the record as a whole, we hold that the November 10th order amended or materially changed the October 4th order, which had the effect of restarting the thirty-day clock.

---

[7]  The court used the language "the Court <u>holds</u>" as if it was determining the scope of the suppression for the first time, instead of using language such as "clarifies," which would suggest that the decision had been previously taken.  Dkt. No. 70, <u>United States</u> v. <u>Santiago-Colón</u>, 15-cv-00396 (emphasis added).

-18-

This makes timely the government's notice of appeal of the November 10th order. See United States v. Cheal, 389 F.3d 35, 53 (1st Cir. 2004) (noting that courts are encouraged "to construe notices of appeal liberally and examine them in the context of the record as a whole" (quoting Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 3 (1st Cir. 2002))).

### iii. 18 U.S.C. § 3731 Certification Issue

Santiago also argues that this court lacks jurisdiction to entertain the interlocutory appeal because the United States Attorney did not timely file a § 3731 certification with the district court certifying that the appeal was not taken to delay the proceedings and that the evidence suppressed is substantial proof of a material fact. Santiago acknowledges that this court has not addressed whether certification is a pre-condition to appellate jurisdiction but argues that we should treat it as such. He further argues that even if we were to treat non-compliance with the certification requirement as a "filing irregularity" governed by Federal Rule of Appellate Procedure 3(a) -- which would leave any appropriate action, including dismissal of the appeal, to the court's sound discretion -- we should not condone the government's "disregard for diligence."

In response, the government acknowledges that it filed the § 3731 certification belatedly, after Santiago pointed out the

government's non-compliance with the certification requirement in his response brief, and apologizes for the late filing.[8]  But, the government claims that such late filing does not require dismissal of the appeal.

The government notes that "[t]he purpose of the certification requirement is to ensure that the prosecutor carefully analyzed the case before deciding to appeal" and that, despite its belated filing of the § 3731 certification, the government did comply with the substance of § 3731 before it filed its notice of appeal.  It points out that the Solicitor General, who decides whether the government will seek appellate review in a given case, "considers a variety of factors, such as the limited resources of the government and the crowded dockets of the courts, before authorizing an appeal," and that this deliberative process was followed here, when the Acting Solicitor General approved filing an appeal on April 19, 2017.  It further points out that the Criminal Division of the United States Attorney's Office also "thorough[ly] review[ed]" this case before the government decided to file its notice of appeal.

---

[8]  The government explains that at the time it filed its notice of appeal, counsel of record was a Special Assistant United States Attorney ("SAUSA") on detail from the Puerto Rico Department of Justice who was inexperienced in federal appellate procedures, and the government first became aware of the missing certification when Santiago raised the issue in his response brief.

The government contends that most appellate courts that have addressed the issue have not treated the certification as a jurisdictional requirement. Rather, "[t]hey have held that whether dismissal is an appropriate remedy is a matter that falls within the court's discretion."

Furthermore, the government points us to United States v. Crespo-Ríos, 645 F.3d 37 (1st Cir. 2011), in which this court rejected the argument that dismissal was warranted because the United States Attorney had not personally signed the § 3731 certification filed with the district court. It notes that in Crespo-Ríos the court gave weight to the deliberative process the government underwent before filing its appeal (including review by the United States Attorney and the Solicitor General), as well as to Congress's mandate that § 3731 be construed liberally. The government argues that both considerations are present in this case and thus urges us to consider the appeal on its merits.

It is uncontested that the government filed its § 3731 certification belatedly. However, in light of Congress's mandate that 18 U.S.C. § 3731 be "liberally construed to effectuate its purposes," we decline Santiago's invitation to treat the certification as a jurisdictional requirement. Instead, we join most of the circuits that have addressed the issue and leave it to the court's sound discretion to determine whether dismissal of an

-21-

appeal for failure to comply with the § 3731 certification requirement is appropriate in a particular case. See, e.g., United States v. Romaszko, 253 F.3d 757, 760 (2d Cir. 2001) (per curiam) (refusing to treat § 3731's certification requirement as jurisdictional and exercising appellate jurisdiction even though the United States Attorney's certification was filed after the defendant-appellee had already filed his brief, because the Solicitor General had authorized the appeal and there seemed to be no prejudice resulting from the belated filing); see also United States v. McNeill, 484 F.3d 301, 309 (4th Cir. 2007) (noting that failure to file a timely § 3731 certification does not deprive the court of jurisdiction over the appeal, but "is a ground for the court of appeals to act as it considers appropriate") (internal quotation marks and citation omitted); United States v. Smith, 263 F.3d 571, 578 (6th Cir. 2001) (treating a failure to timely file a § 3731 as "an irregularity in perfecting [an] appeal" and noting that its "sister circuits have consistently held that the delayed filing of a section 3731 certificate, although disfavored, does not divest appellate courts of their jurisdiction") (collecting cases).

Here, we find that dismissal of the appeal is unwarranted. This case presents an important issue that, as the district court acknowledged, is "definitely capable of repetition"

and would "continue happening."  In fact, the United States District Court for the District of Puerto Rico is already split as to how to resolve this issue of law.[9]  Moreover, this case presents a question of law and, as the district court stated, "[t]his may be the best case to [decide the issue]," which has been fully briefed.  We note that although the government failed to file the required certification at the time it filed its notice of appeal, it complied with the substance and purpose of the certification requirement.  As the government explained, before it filed its brief, the government engaged in the deliberative process to determine whether the issue should be taken on appeal.  Compliance with the essence of this deliberative process, as well as the mandate to construe the statute liberally, were determinative factors in Crespo-Ríos.  645 F.3d at 44 n.6.  Furthermore, the government's failure to timely file the § 3731 certification has in no way prejudiced Santiago.[10]  See Smith, 263 F.3d at 578 (noting

---

[9]  In United States v. Rosado-Cancel, the district court rejected the defendant's argument that federal firearms charges should be dismissed under Sánchez-Valle because a Puerto Rico court had already dismissed parallel Puerto Rico firearms charges for lack of probable cause.  No. 13-731, 2017 WL 543199, at *7 (D.P.R. Feb. 10, 2017) (Domínguez, J.).  Relying on our holding in Bonilla Romero, the district court held that "any issue preclusion argument . . . would . . . fail on lack-of-privity grounds."  Id.

[10]  Santiago claims to have been prejudiced by the government's belated filing of its § 3731 certification because he has remained imprisoned during the pendency of the government's appeal.  He has failed, however, to explain how his situation would have been

-23-

that "[i]n exercising their discretion, courts typically consider a variety of factors, including: when the certificate was filed; the reason for the failure to timely file it; whether the government did in fact engage in a conscientious pre-appeal analysis; whether the government acknowledges that the certification requirement should be taken seriously; any delay or prejudice to the defendant; whether the appeal raises important legal issues needing appellate clarification; and whether the appeal should be heard in the interest of justice, or for any other significant reason") (internal quotation marks omitted).

Finding no procedural issue that divests us of jurisdiction, we now turn to the merits of this appeal.

## B.  Suppression Issue

The government argues that the district court's conclusion -- that because Puerto Rico and the United States are a single sovereign for purposes of the Double Jeopardy Clause, suppression rulings by Puerto Rico courts are binding in federal prosecutions -- is unsupported by Sánchez Valle and contrary to longstanding First Circuit precedent.

---

different had the government timely complied with the certification requirement.  Thus, Santiago has not shown any prejudice stemming from the belated filing.

According to the government, Sánchez Valle does not hold that Puerto Rico and the United States are the same for purposes of all criminal law enforcement and procedure. Instead, it narrowly held that they are a single sovereign for double jeopardy purposes, which the government posits has no bearing in this case. The government argues that the doctrine of collateral estoppel is controlling, as held in "two precedential decisions" which it claims are still binding: Bonilla Romero, 836 F.2d at 42-43, and Pérez-Pérez, 72 F.3d at 226. Under a collateral estoppel analysis, the government urges us to find that the district court was not collaterally estopped by the local court's suppression decision because the United States was neither a party, nor in privity with a party, at the local suppression proceedings.

Santiago agrees with the government that "the doctrine of collateral estoppel controls this case rather than double jeopardy." He notes that the district court "conflate[d] the two," but argues that its ruling is nevertheless "clear." Santiago further argues that Sánchez Valle confirmed that Puerto Rico "has what amounts to an agency relationship with the federal government." Yet, because Bonilla Romero predates Sánchez Valle, the former "did not fully confront Puerto Rico's agency relationship with the United States" and thus should not be controlling. Santiago submits that, in any event, even if Bonilla

-25-

Romero is still good law, it is "factually and legally distinguishable" from his case.

In Bonilla Romero, this court rejected Santiago's contention that suppression of evidence by a Puerto Rico court in a local prosecution necessarily requires suppression of the same evidence in a subsequent federal prosecution. 836 F.2d at 41-45. There, Puerto Rico officers had seized two firearms and drugs from the car and house of the defendant, who was charged with weapons and drug offenses under Puerto Rico law. Id. at 41. Months later, based on that same evidence, a grand jury returned an indictment charging the defendant with federal crimes. Id. After holding a hearing, the Puerto Rico trial court granted the defendant's motion to suppress because the local judge "seriously doubted the veracity" of the officers' testimony. Id. The local prosecution was subsequently dismissed. Id. The defendant then sought suppression of the same evidence in the district court. Id. The district court "held that the federal court was not bound by the decision of the local court to suppress the evidence" and ultimately denied the defendant's motion to suppress. Id. After the defendant was convicted on all federal counts, he appealed the denial of his motion to suppress, arguing, inter alia, that allowing the government to relitigate the suppression issue

violated the Double Jeopardy Clause as well as collateral estoppel principles.  Id.

We rejected both challenges.  First, regarding the double jeopardy challenge, we noted that "jeopardy 'attaches' when a trial commences; that is, when a jury is sworn or empanelled or, in a bench trial, when the judge begins to hear evidence."  Id. at 42 (citing Willhauck v. Flanagan, 448 U.S. 1323, 1325-26 (1980).  Because "jeopardy did not attach as a result of the suppression of evidence ordered . . . by the Puerto Rico . . . [c]ourt[,] and the subsequent dismissal of charges under Puerto Rico law," the litigation of the suppression of evidence issue in federal court did not violate the defendant's rights under the Double Jeopardy Clause.  Id.

Second, assuming without deciding that the doctrine of collateral estoppel applied even when jeopardy had not attached,[11] we rejected the defendant's contention that "relitigation of the

---

[11]  As in Bonilla Romero, this appeal does not require us to decide whether collateral estoppel is applicable in criminal proceedings regardless of whether jeopardy has attached.  See Bonilla Romero, 836 F.2d at 43.  Because both parties urge us to apply the doctrine of collateral estoppel, and because we would reach the same result irrespective of whether the doctrine applies, we assume that the collateral estoppel doctrine is applicable regardless of whether jeopardy has attached. We further note that, although the government stated at oral argument that the Supreme Court seems to be moving away from applying collateral estoppel in criminal cases, the parties did not brief the issue and, instead, both assumed that the collateral estoppel doctrine remains applicable.

suppression was barred by the principle of collateral estoppel" in that case. Id. at 42-44. We noted that the doctrine of collateral estoppel requires, inter alia, "that the party to be precluded from relitigating an issue decided in a previous litigation . . . either [had been] a party or [had been] in privity with a party to that prior litigation," and concluded that said requirement was not satisfied in that case because "the federal prosecutors were neither a party, nor in privity with a party, to the suppression hearing in the Puerto Rico Superior Court."[12] Id. at 43. We clarified that "the source of authority of two government entities is not dispositive of whether they are in privity." Id. at 43. Thus, "Puerto Rico's sovereignty status as a United States territory" has no bearing on the determination of whether federal prosecutors would be bound by a prior suppression of the same evidence by a Puerto Rico court.[13] Id. at 44. Instead, "we must

---

[12] We found that there was no evidence that federal prosecutors were involved in the local prosecution or that they provided assistance or advice to local authorities. Id. at 44. We further noted that "[t]he initial suppression hearing concerned purely local charges over which the federal enforcement officials had no authority and thus no interest," and, accordingly, "[f]ederal prosecutors had no reason to believe that a Puerto Rico Superior Court judge would be deciding any matters affecting a federal prosecution." Id.

[13] Prior to Bonilla Romero, this court had addressed Puerto Rico's sovereignty status as a United States territory in United States v. López Andino, where we held that Puerto Rico was a "separate sovereign for the limited purpose of the double jeopardy clause." 831 F.2d 1164, 1168 (1st Cir. 1987), overruled by Sánchez Valle,

determine whether there was a close or significant relationship between the federal and Puerto Rico prosecutors during the local suppression hearing or whether the federal authorities controlled or actively participated in that hearing such that their interests in enforcing federal law were sufficiently represented."  Id.

In Pérez-Pérez, we reiterated Bonilla Romero's holding that application of the doctrine of collateral estoppel in criminal cases requires that "the party to be precluded . . . have been the same as, or in privity with, the party who lost on that issue in the prior litigation."  72 F.3d at 226 (citing Bonilla Romero, 836 F.2d at 42-44).  We noted that Bonilla Romero had already rejected the defendant's argument that if the United States and Puerto Rico were considered a "single sovereign" for double jeopardy purposes, then they were also in privity under collateral estoppel principles.  Id.

Bonilla Romero directly addresses the issue presently before us.  The district court, however, found that it is no longer good law in light of Sánchez Valle.  It held that because under Sánchez Valle Puerto Rico and the United States are considered "one sovereign when it comes to criminally prosecuting

_____

136 S. Ct. at 1868.  In Bonilla Romero, we noted that there was "extensive argument[]" over that conclusion, including disagreement among members of this court.  836 F.2d at 42 n.2, 44 n.4.

individuals," it "must give the [Puerto Rico] court suppression findings and judgment preclusive effect" even when federal prosecutors "did not participate in the [Puerto Rico] court criminal proceedings against Santiago."  We disagree.

Sánchez Valle is a double jeopardy case.  The Double Jeopardy Clause of the Fifth Amendment protects an individual from being "twice put in jeopardy of life or limb" for the same offense, U.S. Const. amend. V., if the prosecutions are brought by the same sovereign, Sánchez Valle, 136 S. Ct. at 1870.  In Sánchez Valle, the Supreme Court faced the issue of whether Puerto Rico and the United States were the same sovereign for purposes of the Double Jeopardy Clause, which would in turn determine whether the federal government and Puerto Rico were barred "from successively prosecuting a defendant on like charges for the same conduct." Id.  To determine whether Puerto Rico and the United States were the same or different sovereigns for double jeopardy purposes, the court performed a "historical, not functional," inquiry, id. at 1871, looking only to "whether the prosecutorial powers of the two jurisdictions ha[d] independent origins," id. (citing United States v. Wheeler, 435 U.S. 313, 320 (1978)).[14]  It held that they

_____

[14]  The Court specifically stated that "the 'extent of control' that 'one prosecuting authority [wields] over the other'" is irrelevant.  Sánchez Valle, 136 S. Ct. at 1870 (alteration in original).

did not, because "the oldest roots of Puerto Rico's power to prosecute lie in federal soil," id. at 1868, inasmuch as "Congress conferred the authority to create the Puerto Rico Constitution, which in turn confers the authority to bring criminal charges," id. at 1876.  Because the prosecutorial authority of both the federal government and Puerto Rico emanates from a single source -- Congress -- the two are considered a single sovereign for double jeopardy purposes and "the two governments cannot 'twice put' [an individual] 'in jeopardy' for the 'same offence.'" Id. at 1875-77.

There is no doubt that double jeopardy concerns are not implicated in this case.  Santiago's local charges were dismissed before trial, and thus jeopardy never attached in the local courts.[15]  Santiago concedes as much.  The district court itself acknowledged that Sánchez Valle is a case about double jeopardy, but stated that it would "extend Sánchez Valle to the suppression context . . . based on the fact that [Puerto Rico and the United States are] a single sovereign."  According to the district court, although there is no indication in Sánchez Valle that the Supreme

_____

[15]  Furthermore, the local and federal charges were not for the same offenses.  See Brown v. Ohio, 432 U.S. 161, 165 (1977) ("The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.'" (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969))).

Court intended to extend its analysis of the "notion to sovereignty" outside of the double jeopardy context, it did not preclude it either. The district court's holding, however, runs head-on into the law of the circuit rule.

"The law of the circuit rule (a branch of the stare decisis doctrine) holds that 'newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point.'" United States v. Wurie, 867 F.3d 28, 34 (1st Cir. 2017) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)). Exceptions to this rule are "extremely narrow and their incidence is hen's-teeth-rare." San Juan Cable LLC, 612 F.3d at 33. "Such exceptions come into play only when the holding of the prior panel is 'contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling).'" Id. (quoting United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008)). "An even less common exception has been recognized in those 'rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.'" Wurie, 867 F.3d at 34 (quoting Rodríguez, 527 F.3d at 225).

Here, there has been no en banc decision from this court contradicting our holding in Bonilla Romero.  There has also been no statutory overruling.  Nor is there a Supreme Court opinion directly on point contradicting our precedent.  We are thus left to consider the only remaining exception to the law of the circuit rule -- whether Sánchez Valle, although not directly controlling, offers a sound reason for believing that the Bonilla Romero panel would change its collective mind.  We find that it does not.

Sánchez Valle, which had nothing to do with collateral estoppel, and where the Supreme Court emphasized the narrowness of its holding, held that Puerto Rico and the United States are a single sovereign for purposes of the Double Jeopardy Clause because the source of authority of both prosecutorial powers derive from the same source.  Although Puerto Rico and the United States had not been considered a single sovereign in the context of a criminal proceeding at the time that Bonilla Romero and Pérez-Pérez were decided, this court nevertheless considered in Bonilla Romero the possible effect of deeming Puerto Rico and the United States a single sovereign and rejected that the "source of authority of [the] two governmental entities" could be "dispositive of whether they are in privity."  Bonilla Romero, 836 F.2d at 43.

We held, both in Bonilla Romero and in Pérez-Pérez, that Puerto Rico's sovereign status as a United States territory "does

-33-

not determine whether the federal prosecutors are bound by a pretrial suppression order issued by a Puerto Rico court." Bonilla Romero, 836 F.2d at 44; see also Pérez-Pérez, 72 F.3d at 226 (noting that Bonilla Romero rejected that finding that Puerto Rico and the United States are a "single sovereign" "establishes an identity between the two governments"). Instead, what determines whether collateral estoppel is applicable is whether "the party to be precluded from relitigating an issue decided in a previous litigation was either a party or in privity with a party to that prior litigation." Bonilla Romero, 836 F.2d at 43. Because at the time of Bonilla Romero and Pérez-Pérez we considered the possibility that Puerto Rico and the United States could be deemed a single sovereign, and nonetheless rejected that a finding of single sovereignty would affect our analysis of the issue, we find no sound reason to believe that the Bonilla Romero panel would change its collective mind in light of Sánchez Valle. Accordingly, we conclude that Bonilla Romero is still good law.

Santiago, however, urges us to find his case distinguishable from Bonilla Romero, arguing that: (1) unlike in his case, the local decision suppressing the evidence in Bonilla Romero was not "a final decision from the highest court in Puerto Rico"; (2) the district court in Bonilla Romero had held a suppression hearing before the local court entered its order

suppressing the evidence in the local proceedings; (3) it is "unclear from the record in <u>Bonilla Romero</u> whether the [local] court applied relevant federal law in its order granting the motion to suppress"; and, (4) because <u>Bonilla Romero</u> was decided shortly after <u>López Andino</u>, 831 F.2d at 1164, we can presume that <u>López Andino</u>'s holding "permeated" <u>Bonilla Romero</u>'s rationale; yet that rationale no longer stands on firm ground after <u>Sánchez Valle</u>. We find these arguments unpersuasive. Nothing in <u>Bonilla Romero</u> suggests that the first three factors played any role in this court's analysis.[16] Santiago's last alleged distinction fares no better in light of <u>Bonilla Romero</u>'s explicit statement that "the source of authority of the two government entities" was also irrelevant to the analysis. <u>Bonilla Romero</u>, 836 F.2d at 43-44. Accordingly, we do not find Santiago's case distinguishable from <u>Bonilla Romero</u>.

Applying our on-point precedent, we conclude that the district court erred when it deemed itself bound by the Puerto

---

[16] Furthermore, Santiago's argument that his case is distinguishable from <u>Bonilla Romero</u> because that case did not involve "a final decision from the highest court in Puerto Rico" is misleading. The local decision suppressing the identification evidence in Santiago's local case, although final, was not a decision from the highest court in Puerto Rico. In fact, the Puerto Rico Supreme Court declined to intervene in the case. Thus, it was a final decision from the local intermediate court. In any event, how high the case went in the local courts is not relevant to whether there was privity between the prosecuting authorities.

Rico Court of Appeals's decision to suppress the identification evidence without analyzing whether the requirements of collateral estoppel were satisfied. See id.; see also Pérez-Pérez, 75 F.3d at 226. We note that the district court went to great lengths to clarify that it was not ruling on collateral estoppel grounds, but that was precisely the analysis that it should have applied. The district court should have analyzed whether the federal prosecutor was in privity with the local prosecutors that participated in the local suppression proceedings. It erred in failing to do so.

As his final plea, Santiago urges us to find that the government is collaterally estopped from litigating the suppression issue in the district court. He argues that, although the federal prosecution was not a party, it was in privity with the local prosecution when the latter litigated the suppression issue in Puerto Rico courts. Because the parties do not dispute the facts on which the privity analysis hinges, we proceed to analyze the issue. See Bonilla Romero, 836 F.2d at 43-44 (analyzing the privity issue in the first instance).

Santiago posits that the federal prosecution was in privity with the local prosecution due to the relationship between local and federal prosecutors. He claims that the federal prosecution was involved in his local proceedings because the events of January 13 constituted a violation of his federal

-36-

probation. In support of this assertion, he cites to a filing by the SAUSA then assigned to the federal case, which stated, "the United States has been in contact and coordination with the victim of the attempted murder charges and with the Puerto Rico Police Department agent who has conducted the investigation into the alleged crime."[17] He further contends that the SAUSA then assigned to the federal prosecution was on detail from the Puerto Rico Department of Justice, and that the victim (Sepúlveda) and the investigating officer (Quiles) involved in the local prosecution "were backbone[s] of the federal prosecution." In addition, Santiago submits that the "charging structure . . . also supports a finding of strategic cooperation between federal and local prosecutors." In sum, Santiago argues that because "[local] and federal prosecutors -- two hands of the same sovereign -- simultaneously worked two prosecutions involving the same facts, the same witnesses, and the same law[,] [t]heir legal relationship and actions support[] a finding of privity."

We find Santiago's arguments unpersuasive. Although Santiago argues that Puerto Rico has "what amounts to an agency relationship" with the United States, Bonilla Romero is clear that

---

[17] This quote, taken from the government's motion for an extension of time to respond to Santiago's motion to suppress evidence, does not indicate that the SAUSA had been in contact or coordination with state prosecutors.

Puerto Rico's relationship with the United States "is not dispositive of whether they are in privity."  Bonilla Romero, 836 F.2d at 43.  Furthermore, the district court explicitly found that the federal prosecutor did not participate in the local proceedings against Santiago, and Santiago failed to show that this factual finding was erroneous, much less clearly erroneous. See United States v. Tiru-Plaza, 766 F.3d 111, 114-15 (1st Cir. 2014) (noting that on appeal from a district court's suppression ruling, we review factual findings for clear error).  Nor does the record support Santiago's contention that the federal prosecution controlled or was involved in the Commonwealth proceedings, which "concerned purely local charges over which the federal enforcement officials had no authority and thus no interest."  Bonilla Romero, 936 F.2d at 44.

Although shortly after the shootout a United States Probation Officer filed a motion notifying the district court that he had been in contact with the victim and the investigating officer, the motion does not state or imply that a federal prosecutor (as opposed to a United States Probation Officer) had been in contact or coordination with state prosecutors.  See id. at 43 ("In this case, the requirement was not satisfied since the federal prosecutors were neither a party, nor in privity with a party, to the suppression hearing in the Puerto Rico Superior

-38-

Court.") (emphasis added).  It was not until five months after the local suppression hearing took place that a federal prosecutor entered an appearance in Santiago's federal probation revocation proceedings.[18]  In addition, although the federal prosecutor assigned to his case was a SAUSA on detail from the Puerto Rico Department of Justice, Santiago has offered no evidence that she was involved in the local suppression proceedings, that she assisted or gave advice to local authorities, or even discussed the matter with them.  Moreover, this court has clarified that "the appointment of a state prosecutor as a special federal prosecutor, subsequent to the state court action, 'does not retroactively make the federal government a party to an earlier state court proceeding.'"  United States v. Charles, 213 F.3d 10, 21 (1st Cir. 2000) (quoting United States v. Safari, 849 F.2d 891, 893 (4th Cir. 1988)).

We also find unpersuasive Santiago's argument that privity can be found because both prosecutions involve the same facts, witnesses (including the victim and the investigating officer), or law. Involvement of the same victim and investigating officer in two prosecutions is to be expected where local and

---

[18]  It is understandable that the federal prosecutor would be in contact with the victim and the agent conducting the investigation because they would presumably be government witnesses at the revocation hearing in federal court.

federal charges are brought for the same underlying events, even if the local and federal prosecutions are for different offenses with different elements. In fact, the federal and local prosecutions in Bonilla Romero involved at least the same facts and witnesses, yet this court found no privity between the prosecuting authorities. Bonilla Romero, 836 F.2d at 41, 44. Finally, contrary to Santiago's contention, the timing of the events -- where federal charges were brought before the local case was dismissed, and local charges were refiled after Santiago's federal case was already pending -- suggests that there was no coordination between the federal and local prosecutions.

In sum, what determines if privity exists is whether there was "a close or significant relationship between the federal and Puerto Rico prosecutors during the local suppression [proceedings] or whether the federal authorities controlled or actively participated in [those proceedings] such that their interests in enforcing federal law were sufficiently represented." Id. at 44. Because nothing suggests this happened in Santiago's case, we find that there was no privity between the two prosecuting authorities and, thus, collateral estoppel is not applicable.

### III. Conclusion

For the foregoing reasons, we reverse and vacate the district court's order and find that, because there was no privity

between the two prosecuting authorities, collateral estoppel is inapplicable. We remand the case to the district court for proceedings consistent with this decision.

**<u>Reversed, Vacated and Remanded</u>.**