# United States Court of Appeals
## For the First Circuit

No. 18-1916

UNITED STATES OF AMERICA,

Appellee,

v.

VAUGHN LEWIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Inga S. Bernstein, with whom Zoraida Fernández and Zalkind
Duncan & Bernstein LLP were on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with
whom Andrew E. Lelling, United States Attorney, was on brief, for
appellee.

June 16, 2020

**KAYATTA**, **Circuit Judge**. Vaughn Lewis was sentenced to 108 months' imprisonment for conspiracy to distribute cocaine after the district court applied a career-offender enhancement. Under § 4B1.1(a) of the United States Sentencing Guidelines (the "Sentencing Guidelines"), this enhancement applies where a defendant has at least two prior felony convictions of a "controlled substance offense." U.S.S.G. § 4B1.1(a). The commentary to § 4B1.2 provides that such offenses include conspiracies and other inchoate crimes. Because we have previously held this commentary authoritative in defining a "controlled substance offense," we affirm Lewis's sentence.

## I.

## A.

Lewis's charges stem from an investigation into a drug-trafficking conspiracy led by Luis Rivera in Brockton, Massachusetts.[1] Police began investigating Rivera's drug-supplying operations following a tip provided by a cooperating witness.

On February 22, 2016, the police intercepted communications between Lewis and Rivera in which Lewis arranged to purchase sixty-two grams of cocaine, asking for the "same thing as

_____

[1] Rivera was sentenced to 120 months of imprisonment with five years of supervised release and was assessed a $5,000 fine.

-2-

last time." In another intercepted communication, Rivera told Lewis to meet "where you seen me last" to complete the transaction. While surveilling the address provided, police observed a transaction between Rivera and an unidentified individual driving a gray 2007 Toyota Camry, which turned out to be registered to Lewis's girlfriend, with whom Lewis lived at the time.

On February 26, 2016, law enforcement intercepted another communication between Rivera and Lewis about an additional purchase. The police identified Lewis, who was driving a black 2010 Nissan also registered to his girlfriend, when he met with Rivera.

On June 9, 2016, police executed a search and arrest warrant at Lewis's apartment. In a storage area associated with his apartment, the police found "small amounts of drugs (including cocaine)" as well as "drug paraphernalia," such as a bag containing scales and packaging material. The police additionally uncovered a loaded revolver, three dozen rounds of ammunition, and personal documents belonging to Lewis. Lewis denied ownership of all the items seized from the storage area except for his personal documents. He insisted that the revolver was not his, although he did not contest the firearm enhancement for purposes of his Sentencing Guidelines calculation.

**B.**

On July 13, 2016, a federal grand jury returned a one-count superseding indictment charging Lewis with conspiracy to distribute cocaine powder in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1). Lewis pleaded guilty to the offense, which carries a statutory maximum term of twenty years' imprisonment.

The Probation Office's Presentence Investigation Report ("PSR") assigned a base offense level of sixteen, pursuant to U.S.S.G. § 2D1.1(c)(12), which it increased by two levels under U.S.S.G. § 2D1.1(b)(1) on account of the discovered revolver, yielding an adjusted offense level of eighteen. The PSR also determined that Lewis qualified as a career offender under the Sentencing Guidelines because: He had two prior Massachusetts felony convictions for controlled substance offenses; he was over the age of eighteen when he committed the instant offense; and the instant offense was a "controlled substance offense." See U.S.S.G. § 4B1.1(a), (b)(3). The PSR used as predicates Lewis's 1998 conviction for two counts of unlawful distribution of cocaine[2] as well as his 2010 conviction for possession with intent to

_____

[2] Lewis was sentenced to three to four years of imprisonment for these charges and was released on February 2, 2002.

-4-

distribute cocaine and distribution of cocaine.[3] Applying the career-offender enhancement increased Lewis's offense level to thirty-two. Finally, the PSR applied a three-level downward adjustment for "acceptance of responsibility" under U.S.S.G. § 3E1.1, which brought Lewis's total offense level down to twenty-nine. Based on Lewis's criminal history category ("CHC") of IV, the PSR calculated Lewis's Guidelines sentencing range ("GSR") to be 151 to 188 months of imprisonment.

Lewis objected to the PSR on several grounds, most notably by challenging his career-offender classification. He argued that his instant conspiracy conviction could not count as a "controlled substance offense" under the Sentencing Guidelines and that existing circuit precedent to the contrary should be reconsidered.

On September 7, 2018, the district court sentenced Lewis to 108 months of imprisonment to be followed by three years of supervised release. The district court adopted the PSR's recommendation classifying Lewis as a career offender under U.S.S.G. § 4B1.1. Applying circuit precedent, the court overruled Lewis's objection to the career-offender designation. It agreed that Lewis's age as well as his instant conviction (conspiracy to

---

[3] Lewis was sentenced to five years of imprisonment for this charge and was released on July 12, 2013.

-5-

distribute cocaine) and predicate offenses (two prior state drug-trafficking offenses) triggered the career-offender enhancement, thus bringing his GSR to a tally of 151 to 188 months of imprisonment.[4]

The district court stressed the seriousness of the offense, including the presence of the gun, and stated that "[r]egardless of whether [Lewis is] a career offender or not, [he has] a history of recidivism," and it needed to "send . . . a very clear message . . . that [Lewis] cannot continue to sell drugs." The court nevertheless varied Lewis's sentence down to 108 months because his first predicate offense, the 1998 drug conviction, involved the sale of $40-worth of drugs when he was seventeen. The district court judge also stated that "if career offender does not apply, I want this to come back to me to resentence because I am using career offender as an anchor."[5]

---

[4] The parties agree that without the career-offender designation Lewis's GSR would have been thirty-seven to forty-six months of imprisonment.

[5] Relatedly, the court noted that because Lewis was seeking to vacate his second predicate offense (the 2009 drug conviction), which was then on appeal before the Massachusetts Appeals Court, it wanted the case returned for resentencing if he prevailed. However, the Appeals Court has since affirmed the denial of Lewis's motion to withdraw his guilty plea to the state-law charge of possession of heroin with the intent to distribute, thereby foreclosing this avenue for resentencing. See Commonwealth v. Lewis, 136 N.E.3d 1226 (Mass. App. Ct. 2019).

On September 14, 2018, Lewis timely appealed.

## II.

We review de novo the district court's interpretation and application of the Sentencing Guidelines. United States v. Tavares, 705 F.3d 4, 24 (1st Cir. 2013).

When determining whether to apply a career-offender enhancement under the Sentencing Guidelines, sentencing courts adhere to §§ 4B1.1 and 4B1.2 of the Sentencing Guidelines and their corresponding enabling statute, 28 U.S.C. § 994(h). Under § 4B1.1(a), a defendant qualifies as a "career offender" if (1) "the defendant was at least eighteen years old at the time [he] committed the instant offense"; (2) the instant offense "is a felony that is either a crime of violence or a controlled substance offense"; and (3) "the defendant has at least two prior felony convictions" -- known as predicates -- for "either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Section 4B1.2(b) of the Sentencing Guidelines defines the term "controlled substance offense" as follows: [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense. Id.

-7-

§ 4B1.2(b).[6]  Crucially for this case, Application Note 1 of the commentary to § 4B1.2, adopted by the United States Sentencing Commission (the "Sentencing Commission"), states that for purposes of applying the career-offender enhancement, both crimes of violence and controlled substance offenses "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."  Id. § 4B1.2, cmt. n.1.[7]

Lewis raises five arguments as to why the career-offender enhancement nevertheless should not apply in his case:  First, Application Note 1 is inconsistent with the text of the Sentencing Guidelines and their enabling statute, and therefore following the Application Note amounts to unconstitutional and "[u]nchecked . . . [d]eference to the Commission's [i]nterpretation of its [o]wn [r]ules."  Second, even if Application Note 1 is not inconsistent with the definition of "controlled substance offense" in § 4B1.2, the Sentencing Commission exceeded its rulemaking authority under § 994(h) by "enlarg[ing] the definition of 'controlled substance offenses' to

---

[6]  By contrast, the definition of "crime of violence" in the Sentencing Guidelines contemplates the use or "attempted use . . . of physical force" in its force clause.  See U.S.S.G. § 4B1.2(a)(1).

[7]  See U.S.S.G. amend. 268 (Nov. 1, 1989).  Six years later, the Sentencing Commission re-promulgated the Application Note 1 without change.  See U.S.S.G. amend. 528 (Nov. 1, 1995).

include conspiracies." Third, his state offenses do not count as predicates for a career-offender enhancement. Fourth, in the event Application Note 1 commands deference, his conspiracy conviction is a categorical mismatch with the generic Sentencing Guidelines conspiracy. And fifth, the district court erred in not acknowledging that it could vary downwardly based on a disagreement with the policy underlying § 4B1.2.

Lewis's first two arguments, and the additional points he makes in support of those arguments,[8] run headfirst into our prior holdings that "controlled substance offenses" under § 4B1.2 include so-called inchoate offenses such as conspiring to distribute controlled substances. See United States v. Piper, 35 F.3d 611 (1st Cir. 1994); United States v. Fiore, 983 F.2d 1 (1st Cir. 1991), abrogated on other grounds by United States v. Giggey, 551 F.3d 27, 28 (1st Cir. 2008) (en banc) (reversing course on whether burglary of something other than a dwelling is a predicate offense); see also United States v. Nieves-Borrero, 856 F.3d 5 (1st Cir. 2017) (holding that following Piper was not plain error).

---

[8] Lewis maintains that his state drug-trafficking offenses do not count as predicates for a career-offender enhancement because they are not specifically listed as controlled substance offenses triggering sentencing at or near the maximum under § 994(h), and that Application Note 1 violates the rule of lenity, due process, and the separation of powers. These arguments are also foreclosed by our circuit precedent. See United States v. Piper, 35 F.3d 611, 619-20 (1st Cir. 1994).

In Fiore, we encountered as a "question of first impression" the issue of whether a prior conviction for conspiracy could qualify as a predicate offense for purposes of the career-offender provisions of the Sentencing Guidelines. 983 F.2d at 1, 4. The defendant in that case contended that his prior convictions for conspiracy to violate a Rhode Island controlled substance act and conspiracy to break and enter a commercial structure did not qualify as predicate offenses under the Sentencing Guidelines' career-offender provisions. Id. at 2. We held that they did, explaining that "[i]n general, we will defer to the Commission's suggested interpretation of a guideline provision unless [that] position [was] arbitrary, unreasonable, inconsistent with the guideline's text, or contrary to law." Id.[9]

In Piper, we again encountered a challenge to whether a conspiracy conviction qualifies as a controlled substance offense. The defendant argued both that Application Note 1 was inconsistent with the career-offender guideline and that inclusion of

---

[9] We further explained that Application Note 1 "implement[ed] [the] categorical approach in a sensible fashion," and explained that Taylor v. United States, 495 U.S. 575 (1990), which adopted a "'formal categorical approach' for determining whether an offense was a violent felony" for purposes of the Armed Career Criminal Act, was "entirely consistent" with the Sentencing Commission's approach under the career-offender guideline, and that it allows consideration of the object of the conspiracy in its analysis. Fiore, 983 F.2d at 3.

-10-

conspiracy exceeded the Sentencing Commission's statutory authority. 35 F.3d at 617. As to the first claim, we applied Stinson v. United States, 508 U.S. 36, 45 (1993). Piper, 35 F.3d at 617. In Stinson, the Supreme Court held that the Sentencing Guidelines commentary constitutes the Sentencing Commission's "interpretation of its own legislative rules," and that so long as it does not "violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the [the Guidelines].'" 508 U.S. at 45 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). Under that framework, if any inconsistency arises between the commentary and the guideline it interprets -- i.e., if "following one will result in violating the dictates of the other" -- the guideline supersedes the commentary. Id. at 43. We held that a conviction for conspiracy to possess with the intent to distribute over one hundred kilograms of marijuana could serve as a triggering offense for career-offender purposes so long as a "crime of violence" or a "controlled substance offense" was the object of the conspiracy. Piper, 35 F.3d at 613, 619. We reasoned that "[b]ecause [Application Note 1] neither excludes any offenses expressly enumerated in the guideline, nor calls for the inclusion of any offenses that the guideline expressly excludes, there is no inconsistency" between the two. Id. at 617; see also id.

-11-

(reasoning that Application Note 1 "comports sufficiently with the letter, spirit, and aim of the guideline to bring it within the broad sphere of the Sentencing Commission's interpretive discretion").

We also determined in Piper that Application Note 1 did not "contravene[] 28 U.S.C. § 994(h)." Id. at 617-18. We based this conclusion on our understanding that the legislative history showed that Congress intended § 994(h) to be "a floor[] describing the irreducible minimum that the Sentencing Commission must do by way of a career offender guideline," not "a ceiling" of what offenses may be included. Id. at 618.

Finally, in Nieves-Borrero we relied on Piper to hold that it was not plain error for the district court to count a conviction for the crime of attempt to possess with intent to distribute a controlled substance as a "controlled substance offense" under the Sentencing Guidelines. 856 F.3d at 9.

This circuit precedent forecloses Lewis's arguments as to the authority of Application Note 1, including his contention that Application Note 1 is inconsistent with the text of the career-offender guideline, and that its promulgation exceeded the Sentencing Commission's statutory authority under 28 U.S.C. § 994(h). Under the "law of the circuit" doctrine, "newly constituted panels in a multi-panel circuit court are bound by

-12-

prior panel decisions that are closely on point." United States v. Santiago-Colón, 917 F.3d 43, 57 (1st Cir. 2019) (quoting United States v. Wurie, 867 F.3d 28, 34 (1st Cir. 2017)).

Two exceptions exist to the law of the circuit doctrine, neither of which applies to Lewis's case. We recognize a first exception when "[a]n existing panel decision [is] undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling." Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995). A second exception applies "in those 'rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.'" Santiago-Colón, 917 F.3d at 57-58 (quoting Wurie, 867 F.3d at 34). These "exceptions to the law of the circuit doctrine are narrowly circumscribed" to preserve the "stability and predictability" essential to the rule of law. United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018); see also Kisor v. Wilkie, 139 S. Ct. 2400, 2422 (2019) ("Adherence to precedent is 'a foundation stone of the rule of law.'" (quoting Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 798 (2014))).

There is plainly no subsequent contrary controlling

-13-

authority on the question at hand. Neither our court nor the Supreme Court has considered the relationship between § 4B1.2 and Application Note 1 since our decisions in Fiore, Piper, and Nieves-Borrero. So the first exception to the law of the circuit doctrine cannot apply here.

Lewis, therefore, relies primarily on the second exception. He submits that the Supreme Court's recent decision in Kisor v. Wilkie, 139 S. Ct. 2400, which issued three months after Lewis filed his opening brief in this appeal, compels us to reexamine our precedent.[10] In his view, Kisor, even if not directly controlling, "offers a sound reason for believing that [our] former panel[s], in light of fresh developments, would change

_____

[10] Lewis also argues that the Supreme Court's decision in United States v. LaBonte, 520 U.S. 751 (1997), casts doubt on Piper's statutory holding that the Sentencing Commission may rely on its "lawfully delegated powers" under § 994(a) to include offenses in the career-offender guideline beyond those listed in § 994(h). Piper, 35 F.3d at 618 (holding that § 994(h) sets a "floor" and not a "ceiling"). But LaBonte addressed an entirely different issue: the meaning of § 994(h)'s direction to the Sentencing Commission to prescribe a career-offender penalty "at or near the statutory maximum." 520 U.S. at 752-53. In interpreting that language, the Court applied the principle, established long before Piper, that the Sentencing Commission cannot adopt a guideline that conflicts with the plain text of the enabling statute. See id. at 757. As such, nothing in LaBonte undermines our holding in Piper, which itself recognized "the primacy of the statute" and considered its text in light of its legislative history. 35 F.3d at 617 n.3, 618.

[their] collective mind[s]." Santiago-Colón, 917 F.3d at 57-58 (quoting Wurie, 867 F.3d at 34). We disagree.

In Kisor, the Supreme Court considered, but rejected, a challenge to the Auer/Seminole Rock doctrine, which reflects the long-standing practice of deferring to "agencies' reasonable readings of genuinely ambiguous regulations," 139 S. Ct. at 2408,[11] and which serves in part as the foundation for our circuit's prior precedents concerning Application Note 1. See Piper, 983 F.2d at 617 (citing Stinson, 508 U.S. 36 (citing Seminole Rock, 325 U.S. at 414)). See generally Auer v. Robbins, 519 U.S. 452 (1997); Seminole Rock, 325 U.S. at 410. It is nevertheless fair to say that Kisor sought to clarify the nuances of judicial deference to agency interpretations of regulations. In the Court's words, Kisor aims to recall the limits "inherent" in the Auer/Seminole Rock doctrine and to "restate, and somewhat expand on, those principles." Id. at 2414-15. As the Court put it, when reviewing an agency's interpretation of its own regulation, "a court should not afford Auer deference unless the regulation is genuinely ambiguous," and after deploying the full interpretive "legal

---

[11] In Kisor, the Supreme Court considered deference afforded by the Federal Circuit to the Board of Veterans' Appeals' interpretation of the meaning of the term "relevant" records in a VA regulation providing retroactive benefits. See 139 S. Ct. at 2423.

toolkit" to "resolve . . . seeming ambiguities out of the box." Id. at 2415. Then, "[i]f genuine ambiguity remains," a court must ensure that "the agency's reading [is] 'reasonable,'" id. (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994)), meaning that it "must come within the zone of ambiguity the court has identified after employing all its interpretive tools," id. at 2416.

We see nothing in Fiore, Piper, and Nieves-Borrero to indicate that the prior panels in those cases viewed themselves as deferring to an application note that strayed beyond the zone of ambiguity in the Sentencing Guidelines. Nor did those panels suggest that they regarded Auer deference as limiting the rigor of their analysis of whether the guideline was ambiguous. And it is also plain that those panels viewed their analyses as considering both the letter of the text and its purpose. So we fail to find a sound basis for concluding with sufficient confidence that our prior panels would have found in Kisor any reason to "'change [their] collective mind[s]'" with respect to the deference owed to Application Note 1. Wurie, 867 F.3d at 35 (quoting United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008)). At least three circuits have, post-Kisor, adhered to prior circuit holdings akin to our own concerning § 4B1.2 and inchoate offenses. See, United States v. Tabb, 949 F.3d 81, 87 (2d Cir. 2020); United States v.

Lovelace, 794 Fed. App'x 793, 795 (10th Cir. 2020); United States v. Crum, 934 F.3d 963, 965 (9th Cir. 2019) (per curiam), reh'g denied, No. 17-302 (9th Cir. Oct. 29, 2019), cert denied, No. 19-7811, 2020 WL 1496759 (Mar. 30, 2020) (mem.). And Kisor itself expressly denied any intent to "cast doubt on many settled constructions of rules" and inject "instability into so many areas of law." 139 S. Ct. at 2422. Simply put, we do not find anything in our prior opinions suggesting that those panels understood themselves as straying beyond the zone of genuine ambiguity in deeming Application Note 1 consistent with § 4B1.2.

Lewis also points us to United States v. Soto-Rivera, 811 F.3d 53 (1st Cir. 2016), another case which he argues casts doubt on the durability of the Fiore, Piper, and Nieves-Borrero panel decisions. The court's holding in Soto-Rivera, however, was necessarily limited to the issue presented there: whether Application Note 1 properly categorized the offense of being a felon in possession of a machine gun as a "crime of violence" under § 4B1.2(a) "shorn of the residual clause." Soto-Rivera, 811 F.3d at 54, 60-62. The court wrote that without the residual clause, "[t]here [was] simply no mechanism or textual hook in the [g]uideline that allow[ed] us to import offenses not specifically listed therein into § 4B1.2(a)'s definition of 'crime of violence.'" Id. at 60. But it had no need to address § 4B1.2(b)

-17-

or the portion of Application Note 1 that defines conspiracies as "controlled substance offense[s]."  So, Soto-Rivera could not have modified Piper, Fiore, or Nieves Borrero.

Finally, Lewis calls our attention to the D.C. Circuit's decision in United States v. Winstead, 890 F.3d 1082 (D.C. Cir. 2018),[12] the Sixth Circuit's decision in United States v. Havis,[13] 927 F.3d 382 (6th Cir. 2019) (en banc), and the Ninth Circuit's decision in Crum, 934 F.3d 963.  These cases do not constitute controlling authority in this circuit.  See Igartúa v. United States, 626 F.3d 592, 604 (1st Cir. 2010) (explaining that the second exception to the law-of-the-circuit doctrine has been interpreted narrowly and should be applied when recent Supreme Court precedent calls into question a prior panel opinion); United States v. Lewis, 517 F.3d 20, 24 (1st Cir. 2008) ("The law of the circuit rule does not depend on whether courts outside the circuit march in absolute lock step with in-circuit precedent.").

---

[12]  In Winstead, the D.C. Circuit held that the inclusion of inchoate offenses in Application Note 1 was inconsistent with § 4B1.2(b), reasoning that "Section 4B1.2(b) presents a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses," and applying the expressio unius est exclusio alterius canon.  890 F.3d at 1091.

[13]  In Havis, the Sixth Circuit held that "[t]he text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substance offenses," after finding that "the Commission used Application Note 1 to add an offense not listed in the guideline."  927 F.3d at 386-87.

-18-

Moreover, these cases raise arguments that, in any event, mirror those considered by the prior panels in this circuit that we have already discussed. See United States v. Hudson, 823 F.3d 11, 15 (1st Cir. 2016) (rejecting an argument where the defendant offered "no new or previously unaddressed reason to deviate from our prior holdings").

None of this is to say how we would rule today were the option of an uncircumscribed review available. That the circuits are split suggests that the underlying question is close. We hold only that the case for finding that the prior panels would have reached a different result today is not so obviously correct as to allow this panel to decree that the prior precedent is no longer good law in this circuit. We are a court of six sitting members, on which it customarily takes four votes to sit en banc. Were panels of three too prone to reverse prior precedent, we would lose the benefits of stability and invite litigants to regard our law as more unsettled than it should be.

## III.

Lewis presents two additional arguments on appeal, neither of which he preserved in the district court. We review each only for plain error. See United States v. Ortíz-Mercado, 919 F.3d 686, 689 (1st Cir. 2019). In order to establish plain error, a defendant must show that: "(1) there was error; (2) the

-19-

error was plain; (3) the error affected [his] substantial rights; and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings." United States v. Clemens, 738 F.3d 1, 10 (1st Cir. 2013) (alteration in original) (quoting United States v. Caraballo-Rodriguez, 480 F.3d 62, 69 (1st Cir. 2007)). Plain error is a "high hurdle," requiring demonstration both "that an error occurred and that it was clear or obvious." United States v. Diaz, 285 F.3d 92, 95-96 (1st Cir. 2002).

Lewis first contends that the district court erred by not exercising discretion to vary downwardly from his calculated Guidelines sentence and thereby, as he puts it, "disagree" with the commentary's inclusion of conspiracy as a predicate offense on policy grounds. Under Kimbrough v. United States, district courts have discretion to vary downwardly from a sentence on the basis of a policy disagreement with the relevant guideline. 552 U.S. 85, 109-10 (2007). Lewis argues that certain comments made by the district court in applying the career-offender enhancement indicate that the district court did not believe that it had discretion to disagree with the application of that enhancement. We find this argument unpersuasive.

For starters, Lewis expressly petitioned the district court to vary from the career-offender guideline based on policy

-20-

reasons in his sentencing memorandum. In response, the district court declined to do so, as was clearly its prerogative. See United States v. Ekasala, 596 F.3d 74, 76 (1st Cir. 2010) ("[T]he mere fact that a sentencing court has discretion to disagree with the guidelines on policy grounds does not mean that it is required to do so." (citation omitted)); United States v. Aquino-Florenciani, 894 F.3d 4, 8 (1st Cir. 2009) ("[T]he district court's broad discretion obviously includes the power to agree with the guidelines." (quoting United States v. Stone, 575 F.3d 83, 90 (1st Cir. 2009))).

The knowledgeable district court judge said nothing to suggest that she thought she lacked the ability to vary downwardly based on a disagreement with the application note. The judge made clear that she anchored her decision on the Sentencing Guidelines as our court had interpreted them. And she made clear that if our view changed she would want to resentence. But that is simply to say that she intended to anchor her sentence on a clear-cut interpretation of the Sentencing Guidelines, whatever that may be. It offers no suggestion that the judge thought that she could not vary if she disagreed with the Sentencing Guidelines. Nor did Lewis at the time say anything to suggest that he understood the court to see itself unduly constrained. There was no clear or obvious error here.

-21-

Second, Lewis contends that his conviction under 21 U.S.C. § 846 is a "categorical mismatch" with the generic definition of conspiracy set out in the guideline commentary. Lewis contends that in order to determine whether a conspiracy offense under § 846 can constitute a "controlled substance offense" under § 4B1.1, courts must look, per the categorical approach, to the "generic" definition of the offense of conspiracy within "contemporary usage of the term," and then to whether the offense of conviction satisfies the offense in the Sentencing Guidelines. See Taylor v. United States, 495 U.S. 575, 592 (1990). He notes that a number of state statutes as well as the federal conspiracy statute, 18 U.S.C. § 371, require an overt act for conspiracy, see United States v. Garcia-Santana, 774 F.3d 528, 535 (9th Cir. 2014), § 846, and therefore § 846 punishes more conduct than the generic offense of conspiracy referenced in Application Note 1.

Whether Lewis's own offense of conviction under 21 U.S.C. § 846 is a categorical mismatch with the generic definition of conspiracy is, in this case, a question that we do not have occasion to decide. There is no controlling authority on this issue in this circuit, and the other circuits remain divided in their response to it. Compare United States v. McCollum, 885 F.3d 300, 303-09 (4th Cir. 2018) (conspiracy to murder in aid of

-22-

racketeering, in violation of 18 U.S.C. § 1959(a)(5), is not a "crime of violence" for career-offender purposes because it does not require an overt act), United States v. Whitley, 737 F. App'x 147, 148-49 (4th Cir. 2018) (per curiam) (unpublished) (finding that a conviction violating § 846 does not qualify as a "controlled substance offense" for purposes of the career-offender enhancement), and United States v. Martinez-Cruz, 836 F.3d 1305, 1314 (10th Cir. 2016) (explaining that § 846 was "a categorical mismatch for the generic definition of 'conspiracy'" in the commentary to U.S.S.G. § 2L1.2 because the general requirements of conspiracy include an overt act, while § 846 does not), with United States v. Rivera-Constantino, 798 F.3d 900, 902-06 (9th Cir. 2015), United States v. Sanbria-Bueno, 549 F. App'x 434, 438-39 (6th Cir. 2013) (unpublished), and United States v. Rodriguez-Escareno, 700 F.3d 751, 753-54 (5th Cir. 2012). Therefore, any error, if there was one, could not have been "clear or obvious" as required to establish plain error. See United States v. Laureano-Pérez, 797 F.3d 45, 60 (1st Cir. 2015); Diaz, 285 F.3d at 96 ("If a circuit conflict exists on a question, and the law is unsettled in the circuit in which the appeal was taken, any error cannot be plain or obvious.").

-23-

## IV.

For the foregoing reasons, we **<u>affirm</u>** the district court's sentence.

**- Concurring Opinion Follows -**

**TORRUELLA AND THOMPSON**, <u>Circuit Judges</u> (Concurring).

We join the court's opinion but write separately to express our discomfort with the practical effect of the deference to Application Note 1, <u>see</u> U.S.S.G. § 4B1.2, cmt. n.1, that our precedent commands: The Sentencing Commission has added a substantive offense (here, the inchoate crime of conspiracy) to the relevant career-offender guideline through its commentary as opposed to the statutorily prescribed channel for doing so. "[C]ommentary, though important, must not be confused with gospel." <u>Piper</u>, 35 F.3d at 617. This is as true for us (the reviewing court) as it is for the Sentencing Commission. Therefore, like the Ninth Circuit, were we "free to do so," we "would follow the Sixth and D.C. Circuits' lead" and hold that Application Note 1's expansion of § 4B1.2(b) to include conspiracies and other inchoate crimes does not warrant deference. <u>Crum</u>, 934 F.3d at 966.

Indeed, we have already held that "there is simply no mechanism or textual hook in the Guideline that allows us to import offenses not specifically listed therein into § 4B1.2(a)'s definition of 'crime of violence.'" <u>Soto-Rivera</u>, 811 F.3d at 60. In our view, the same is true of § 4B1.2(b)'s definition of "controlled substance offense." See <u>Havis</u>, 927 F.3d at 386-87 (concluding that "no term in § 4B1.2(b) would bear th[e]

-25-

construction" Application Note 1 purports to give it); <u>Winstead</u>, 890 F.3d at 1091 (explaining that § 4B1.2(b)'s definition "clearly excludes inchoate offenses" like attempt and conspiracy). Neither the government nor any circuit court to address the question has identified any "textual hook" in the guideline to anchor the addition of conspiracy offenses. <u>Soto-Rivera</u>, 811 F.3d at 60.

The government's late-breaking suggestion at oral argument that the offense of conspiracy to commit a controlled substance offense (which forbids only the <u>agreement</u> to commit such an offense plus, sometimes, an overt act in furtherance) "prohibits" the acts listed in § 4B1.2(b), <u>see</u> <u>United States</u> v. <u>Richardson</u>, 958 F.3d 151, 155 (2d Cir. 2020); <u>United States</u> v. <u>Lange</u>, 862 F.3d 1290, 1295 (11th Cir. 2018), would take any modern English speaker (not to mention any criminal lawyer) by surprise. In ordinary speech, criminal laws do not "prohibit" what they do not ban or forbid. And if conspiracy laws "prohibit" the acts listed in § 4B1.2(b) because they "hinder" those acts (as the Second and Eleventh Circuit have reasoned), then it is hard to see why simple possession offenses would not also be "controlled substance offense[s]" under § 4B1.2(b); certainly, laws against possessing drugs hinder their distribution or manufacture. But we know that § 4B1.2(b) does not cover simple possession offenses. See <u>Salinas</u> v. <u>United States</u>, 547 U.S. 188, 188 (2006). On the

-26-

other hand, if the Sentencing Commission wanted to give § 4B1.2(b) a more expansive interpretation, it had obvious alternatives at its disposal that would not have required straining the guideline's words past their breaking point.  See Winstead, 890 F.3d at 1091; United States v. McKenney, 450 F.3d 39, 43-45 (1st Cir. 2006) (reading the ACCA's definition of "serious drug offense," as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," to include conspiracies (emphasis added)).  As the Supreme Court recently clarified, a court's duty to interpret the law requires it to "exhaust all the 'traditional tools' of construction" "in all the ways it would if it had no agency to fall back on" before it defers to an agency's "policy-laden choice" between two reasonable readings of a rule.  Kisor, 139 S. Ct. at 2415.  In our view, we could not "bring all [our] interpretive tools to bear" on the text of § 4B1.2(b) and still find that conspiracies are "controlled substance offense[s]" as the guideline defines them.  Id. at 2423.

By relying on commentary to expand the list of crimes that trigger career-offender status, which may well lead judges to sentence many people to prison for longer than they would otherwise deem necessary (as the district judge indicated was the case here), our circuit precedent raises troubling implications for due

-27-

process, checks and balances, and the rule of law. The Sentencing Commission is an unelected body that exercises "quasi-legislative power" and (unlike most other agencies) is located within the judicial branch. Mistretta v. United States, 488 U.S. 361, 393 (1989). Thus, it can only promulgate binding guidelines, which influence criminal sentences, because they must pass two checks: congressional review and "the notice and comment requirements of the Administrative Procedure Act." Havis, 927 F.3d at 385 (citing Mistretta, 488 U.S. at 394). "Unlike the Guidelines themselves, however, commentary to the Guidelines never passes through the gauntlets of congressional review or notice and comment." Id. at 386. Thus, the same principles that require courts to ensure that agencies do not amend unambiguous regulations in the guise of "interpretation" ("without ever paying the procedural cost"), Kisor, 139 S. Ct. at 2420-21, apply with equal (if not more) force to the Sentencing Guidelines and their commentary. Id.

If it were otherwise, the Sentencing Commission would be empowered to use its commentary as a Trojan horse for rulemaking. See Havis, 927 F.3d at 386-87. This it is surely not meant to do, especially when the consequence is the deprivation of individual liberty. See Winstead, 890 F.3d at 1092 ("This is all the more troubling given that the Sentencing Commission wields the authority to dispense 'significant, legally binding prescriptions

-28-

governing application of governmental power against private individuals -- indeed, application of the ultimate governmental power, short of capital punishment.'" (quoting Mistretta, 488 U.S. at 413 (Scalia, J., dissenting))). The Sentencing Guidelines are no place for a shortcut around the due process guaranteed to criminal defendants. If it so desires, the Sentencing Commission should expand the definition of "controlled substance offense" to add conspiracies by amending the text of § 4B1.2(b) through the statutorily prescribed rulemaking process. See 28 U.S.C. § 994(h), (p), (x).