# United States Court of Appeals
## For the First Circuit

Nos. 22-1444, 22-1449

UNITED STATES,

Appellee,

v.

BERNARD GADSON,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Kayatta, Selya, and Howard,
Circuit Judges.

Chauncey B. Wood, with whom Danya F. Fullerton and Wood & Nathanson, LLP were on brief, for appellant.
Benjamin M. Block, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

August 9, 2023

**KAYATTA**, **Circuit Judge**.  Bernard Gadson was sentenced to 110 months' imprisonment after pleading guilty to crimes arising from his role in a bank fraud scheme.  On appeal, he challenges the procedural reasonableness of his sentence, asserting that the district court miscalculated the appropriate Guidelines sentencing range.  He also challenges the inclusion of certain amounts in the court's restitution order.  For the following reasons, we affirm Gadson's prison sentence, and vacate in part the restitution order.

**I.**

We begin by summarizing the factual background and procedural history that form the basis of Gadson's appeals. "Because [Gadson pleaded] guilty, we draw the relevant facts from the change-of-plea colloquy, the unchallenged portions of the Presentence Investigation Report ('PSR'), and the sentencing hearing transcript."  United States v. González-Andino, 58 F.4th 563, 565 (1st Cir. 2023) (quoting United States v. Díaz-Rivera, 957 F.3d 20, 22 (1st Cir. 2020)).

On October 25, 2021, Gadson pleaded guilty to three crimes stemming from his involvement in a bank fraud conspiracy: (i) attempted bank fraud, in violation of 18 U.S.C. §§ 2, 1344(2); (ii) aiding and abetting aggravated identity theft, in violation of 18 U.S.C. §§ 2, 1028A(1); and (iii) criminal contempt,[1] in

---

[1] Gadson was initially arrested in August 2019 and subsequently released on bond.  The criminal contempt charge

- 2 -

violation of 18 U.S.C. § 401(3).  As relevant here, Gadson and his coconspirators obtained the names and personal information (including dates of birth and social security numbers) of real individuals, and then used that information to apply for loans for themselves in those persons' names, with no intention of repaying the loans.  To support the loan applications, Gadson and his coconspirators also created and used fraudulent supporting documents, such as counterfeit driver's licenses, pay stubs, and lease agreements.  The specific conduct that formed the basis for the bank fraud and identity theft charges occurred in January 2019.

The district court sentenced Gadson to 110 months' imprisonment.  In determining the total offense level for bank fraud and criminal contempt (which were grouped together under the applicable United States Sentencing Guidelines), the court added twelve levels under section 2B1.1 for the monetary losses associated with Gadson's conduct, including losses stemming from uncharged relevant conduct.  See United States v. Flete-Garcia, 925 F.3d 17, 28 (1st Cir. 2019).  Pursuant to the applicable Guidelines commentary, the court looked to "intended loss" rather than "actual loss" because the "intended loss" was the greater of the two.  U.S.S.G. § 2B1.1, cmt. n.3(A).

resulted from conduct that violated the terms of his pretrial release.

- 3 -

Additionally, the court denied Gadson's requested three-level reduction for acceptance of responsibility under section 3E1.1. The government had initially agreed in Gadson's plea agreement to recommend that the district court apply the reduction. And the PSR recommended that Gadson receive the reduction (although it said it was a "close call"), noting the parties' agreement. But the government had reserved the right to change its view, and ultimately opposed the credit because Gadson, according to the government, "falsely den[ied], and frivolously contest[ed], relevant conduct" during the sentencing proceedings.

The district court sided with the government, resting the denial on the fact that Gadson had not "truthfully admitted the conduct that . . . comprise[d] the offense of conviction." Although he had pleaded guilty, Gadson contested the government's characterization of his role in the scheme. He disputed the application of a three-level increase for his role as a "manager or supervisor" of the scheme, as well as the inclusion of much of the conduct taken into account for the purpose of determining loss under section 2B1.1. The court rejected Gadson's contentions, and asked "whether his challenging [of] the findings in the [presentence] report associated with his role [was] frivolous and so lacking in merit as to disqualify him from acceptance of responsibility credit." The court then observed that Gadson had incorrectly "disputed . . . his role in the conspiracy, shifting

blame to his co-conspirators [and] characterizing himself as a minor player relative to them." The court found "ample evidence that he was the top person in this criminal activity," and determined that Gadson "ha[d] not accepted that." "With that background," the court could not "in good faith conclude that he ha[d] sufficiently taken responsibility for his actions so as to receive a reduction."

Ultimately, the court calculated a total offense level of twenty-seven for bank fraud and criminal contempt, yielding a Guidelines sentencing range of 100-125 months. The court then imposed a downward-variant sentence of 80 months for those counts, to run consecutively with the mandatory minimum sentence of 24 months for identity theft and a 6-month sentence pursuant to 18 U.S.C. § 3147 for committing a new offense while on pretrial release.

The court also ordered restitution in the amount of $256,537. Included in that calculation was an auto loan for $107,437 issued by TD Bank to Gadson in October 2020. Gadson obtained the loan in his own name but submitted fraudulent documents regarding his income and employment when applying for it. Gadson was current on all payments on the loan at the time of sentencing, and the court applied a credit of $13,196 for the amount already paid off.

Gadson argues that his prison sentence was procedurally unreasonable based on two Guidelines calculation errors. First, he challenges the district court's use of "intended loss" rather than "actual loss" in determining his offense level for the bank fraud and criminal contempt counts. Second, he asserts that the court erred in denying the three-level reduction for acceptance of responsibility. We address these arguments in turn.

**A.**

Gadson concedes that he did not raise his "actual loss" argument to the district court, and thus we review it for plain error. See United States v. Lewis, 963 F.3d 16, 25 (1st Cir. 2020). "In order to establish plain error, a defendant must show that: '(1) there was error; (2) the error was plain; (3) the error affected [his] substantial rights; and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings.'" Id. (alteration in original) (quoting United States v. Clemens, 738 F.3d 1, 10 (1st Cir. 2013)).

We begin our review with the relevant Guidelines text. For certain theft crimes, including Gadson's, section 2B1.1 specifies a base offense level and then provides for offense-level increases depending on the amount of the loss. U.S.S.G. § 2B1.1(a), (b)(1). If, for example, the loss is more than $6,500 and less than or equal to $15,000, two levels are added; if the

loss is more than $15,000 and less than or equal to $40,000, four levels are added, and so on. U.S.S.G. § 2B1.1(b)(1)(B), (C).

The Guidelines themselves do not define "loss," but the Guidelines commentary to section 2B1.1 provides that "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. n.3(A). The commentary then defines "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense," and defines "intended loss" as "the pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1, cmt. n.3(A)(i)-(ii).

As discussed above, the district court here determined that intended loss was greater than actual loss, ultimately resulting in a twelve-level increase in Gadson's total offense level. Gadson asserts on appeal that the district court should have used actual loss instead of intended loss, and that, had the court done so, he would have received at most a ten-level increase under section 2B1.1.

Gadson thus asks us to reject the commentary's definition of "loss." In Stinson v. United States, 508 U.S. 36 (1993), the Supreme Court held that the Guidelines commentary should be "treated as an agency's interpretation of its own legislative rule," and that, accordingly, the commentary "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Id. at 44-45 (quoting Bowles

v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)).  Applying Stinson, we have held that "disregarding commentary in favor of a guideline or statute is permissible 'only when "following one will result in violating the dictates of the other."'"  United States v. Duong, 665 F.3d 364, 368 (1st Cir. 2012) (quoting United States v. Piper, 35 F.3d 611, 617 (1st Cir. 1994)).

Gadson makes no argument that he could prevail if Stinson applied.  Instead, he asserts that the Supreme Court's decision in Kisor v. Wilkie, 139 S. Ct. 2400 (2019), changed the standard for deferring to the commentary.  Kisor clarified that courts should not defer to an agency's interpretation of its own regulation "unless the regulation is genuinely ambiguous."  Id. at 2415; see Lewis, 963 F.3d at 23-24 (noting that although Kisor rejected a challenge to the Auer/Seminole Rock doctrine of agency deference, "[i]t is nevertheless fair to say that Kisor sought to clarify the nuances of judicial deference to agency interpretations of regulations").  "And before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction."  Kisor, 139 S. Ct. at 2415 (quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984)).  "Then, '[i]f genuine ambiguity remains,' a court must ensure that 'the agency's reading [is] "reasonable,"' meaning that it 'must come within the zone of ambiguity the court has identified after employing all its interpretive tools.'"  Lewis,

- 8 -

963 F.3d at 24 (alterations in original) (citation omitted) (quoting Kisor, 139 S. Ct. at 2415-16).

Applying Kisor, Gadson argues that "loss" as used in section 2B1.1 unambiguously means "actual loss." Gadson further asserts that even if "loss" were ambiguous, defining that term to include "intended loss" would not be reasonable.

Gadson must do more than simply prove that the Guidelines mean what he says they mean. Rather, because we are reviewing Gadson's claim for plain error, he must prove that the district court's error "was plain -- which is to say, clear or obvious." United States v. Romero, 906 F.3d 196, 209 (1st Cir. 2018). And even assuming that Kisor abrogated Stinson, and further assuming that the district court committed error by using intended loss, any such error was not "clear or obvious."

Gadson concedes that his reading of section 2B1.1 does not directly follow from First Circuit precedent. "With no binding precedent on his side, [he] cannot succeed on plain-error review unless he shows his [loss] theory is compelled by the guidelines' language itself." Id. at 207. In making that argument, Gadson cites heavily from United States v. Banks, 55 F.4th 246 (3d Cir. 2022), in which the Third Circuit reviewed de novo whether section 2B1.1 encompasses intended loss. Id. at 255 n.29. That court concluded that "in the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word 'loss'

is the loss the victim actually suffered." Id. at 258. The court, applying Kisor, placed "no weight" on the commentary's definition to the contrary. Id.

In reaching its conclusion, the Third Circuit explained, "The Guideline does not mention 'actual' versus 'intended' loss; that distinction appears only in the commentary. That absence alone indicates that the Guideline does not include intended loss." Id. at 257. The court also relied in part on dictionaries, finding, "Our review of common dictionary definitions of 'loss' point to an ordinary meaning of 'actual loss.' None of these definitions suggest an ordinary understanding that 'loss' means 'intended loss.'" Id. at 258.

Because the Third Circuit was reviewing the question de novo, it expressed no opinion as to whether its interpretation was "clear or obvious." So even if we were to agree with that court's ultimate conclusion that "loss" means actual loss, it would not resolve the matter here. See Lewis, 963 F.3d at 27 (concluding, with respect to a pure question of law, that "any error, if there was one, could not have been 'clear or obvious' as required to establish plain error"); Romero, 906 F.3d at 209 (same); United States v. Caraballo-Rodriguez, 480 F.3d 62, 76 (1st Cir. 2007) (same). The Third Circuit itself provided reason to believe that its conclusion in Banks was not necessarily "obvious," noting that in certain contexts "'loss' could mean pecuniary or non-pecuniary

loss and could mean actual or intended loss." Banks, 55 F.4th at 258.

More importantly, our discussions of section 2B1.1 in past opinions put paid to the claim that it is "obvious" that "loss" does not encompass intended loss. Although we have never squarely addressed a challenge to the commentary's use of intended loss (either before or after Kisor), we have regularly -- both before and after Kisor -- explained the concept in the context of loss calculation challenges. See, e.g., United States v. Akoto, 61 F.4th 36, 45 (1st Cir. 2023) (quoting the commentary to explain that loss for purposes of section 2B1.1 is "the greater of actual loss or intended loss"); United States v. Carrasquillo-Vilches, 33 F.4th 36, 41-42 (1st Cir. 2022) (same); United States v. Rueda, 933 F.3d 6, 8 (1st Cir. 2019) (same); Flete-Garcia, 925 F.3d at 28 (same); United States v. Stokes, 829 F.3d 47, 54 (1st Cir. 2016) (same). In none of these cases have we expressed any doubt regarding the use of intended loss. To the contrary, we have described such use approvingly, noting that "[i]n fraud cases, amount of loss is meant to be a proxy for the harm (both actual and intended) inflicted by the fraudster's nefarious activities," Flete-Garcia, 925 F.3d at 33 (emphasis added), and that "intended loss is frequently a better measure of culpability than actual loss," United States v. Appolon, 695 F.3d 44, 67 (1st Cir. 2012) (emphasis added). These statements provide, at the very least,

reasonable arguments as to why "loss" as used in section 2B1.1 does not unambiguously mean only actual loss, and why "intended loss" falls within that term's "zone of ambiguity."[2]  See Kisor, 139 S. Ct. at 2415-16.  Accordingly, using intended loss in this case was not "clear or obvious" error.[3]

As discussed above, our conclusion is not in direct tension with the Third Circuit's holding in Banks.  Further, our opinion is consistent with a more similar case from the Fourth Circuit, United States v. Limbaugh, No. 21-4449, 2023 WL 119577

---

[2]  The existence of reasonable arguments in support of these positions does not necessarily mean that we would find such positions correct if they were squarely presented on the merits. We reiterate that, for purposes of this opinion, we have only assumed (without deciding) that the district court committed error.  See Romero, 906 F.3d at 209 (concluding that an alleged Guidelines interpretation error was not plain, without "tak[ing] a definitive stand on" the meaning of the relevant Guidelines section); Caraballo-Rodriguez, 480 F.3d at 70 (noting that the court's conclusion that an alleged error of statutory interpretation was not plain did not constitute a "ruling on the merits" of the statute's meaning).

[3]  Gadson briefly mentions that the rule of lenity demands a narrow interpretation of section 2B1.1.  But it is hardly clear how invoking lenity -- a rule reserved for circumstances in which "substantial ambiguity as to the guideline's meaning persists even after a court looks to its text, structure, context, and purposes," United States v. Pinkham, 896 F.3d 133, 138 (1st Cir. 2018) (quoting United States v. Suárez-González, 760 F.3d 96, 101 (1st Cir. 2014)) -- could make it "obvious" that section 2B1.1 compels a particular reading of "loss."  Gadson fails to bridge this gap.

Additionally, because we reject Gadson's intended loss argument, we need not address his claim that the district court erred in including the TD Bank auto loan in the loss calculation. Gadson concedes that such error becomes material only if the district court plainly erred in using intended loss.

(4th Cir. Jan. 6, 2023).  There, as here, the court reviewed for plain error "whether the commentary defining 'loss' [to include intended loss] . . . can be reconciled with the text of § 2B1.1's 'loss' provision."  Id. at *4.  The court observed that it had never directly addressed the "loss" issue, but it "ha[d] routinely deferred to and relied on those commentary definitions in reviewing challenges to loss calculations."  Id.  "Under those circumstances," the court (like this court today) could not "say that the district court committed a 'clear' or 'obvious' error" by using intended loss.  Id.

**B.**

Gadson additionally argues that the district court erred in denying the three-level reduction for acceptance of responsibility.  "We review 'a sentencing court's factbound determination that a defendant has not accepted responsibility' for clear error."  United States v. D'Angelo, 802 F.3d 205, 209 (1st Cir. 2015) (quoting United States v. Jordan, 549 F.3d 57, 60 (1st Cir. 2008)); see United States v. Coleman, 884 F.3d 67, 73 (1st Cir. 2018).

Section 3E1.1(a) provides for a two-level decrease "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  If the defendant qualifies for that two-level decrease, and the defendant's offense level before that reduction was sixteen or more, then section 3E1.1(b)

- 13 -

provides for an additional one-level decrease upon a motion by the government "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1(b).[4]

As relevant here, the commentary to section 3E1.1 lists the following as "appropriate considerations" in "determining whether a defendant qualifies under subsection (a)": "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)"; "post-offense rehabilitative efforts"; and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.1. The commentary also adds that "[a] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with

---

[4] As noted above, the government opposed any reduction for acceptance of responsibility, and thus made no motion for the additional one-level decrease. "But in practice, a district court retains some ability to grant the [additional] reduction even if the government" makes no motion under section 3E1.1(b). United States v. Rivera-Morales, 961 F.3d 1, 16 (1st Cir. 2020). "This ability is narrowly circumscribed: a sentencing court may exercise it only 'when the government's withholding of the predicate motion "was based on an unconstitutional motive" or "was not rationally related to any legitimate government end."'" Id. (quoting United States v. Meléndez-Rivera, 782 F.3d 26, 30 (1st Cir. 2015)).

acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous." Id.

On appeal, Gadson asserts that he is entitled to the reduction based upon his guilty plea "well in advance of trial," the district court's recognition of his post-offense rehabilitative efforts, and the probation officer's support for the reduction. But he does not contest the district court's factual findings that Gadson had, without merit, "disputed . . . his role in the conspiracy" and "ha[d] not accepted" "that he was the top person in this criminal activity" -- the findings that formed the basis for the district court's decision to deny the reduction.

Gadson fails to explain why, based on the Guidelines commentary or anything else, his guilty plea and rehabilitative efforts should outweigh his false denial of his role in the scheme. "A defendant who pleads guilty is not entitled to a downward adjustment for acceptance of responsibility as a matter of right." United States v. Muriel, 111 F.3d 975, 982 (1st Cir. 1997). Further, "[i]t is within the discretion of the district court to deny a reduction on the basis of its determination that a defendant has resorted to half-truths or evasions from the truth in an effort to minimize his or her culpability." Id. at 982-83. Accordingly,

we cannot conclude that the district court clearly erred in determining that Gadson had not accepted responsibility.

### III.

Finally, Gadson asserts that the district court should not have included the TD Bank auto loan in the restitution order. Because the government agrees with Gadson, we vacate the restitution order to that extent and remand this matter to the district court without addressing it on the merits.  See United States v. Foley, 783 F.3d 7, 27-28 (1st Cir. 2015).

### IV.

For the foregoing reasons, we affirm Gadson's prison sentence.  We vacate in part (as to the TD Bank loan), and otherwise affirm the district court's restitution order, and remand for further proceedings consistent with this opinion.